In re John Kent MUELLER, and Mary Ann Brooks–Mueller, Debtors.

John Kent MUELLER, a/k/a/ J. Kent Mueller, Plaintiff,

v.

STATE OF IDAHO, Defendant.

Bankruptcy No. 97–10073–7.
Adversary No. 97/00048.

United States Bankruptcy Court,
D. Montana.

Aug. 15, 1997.

738

Craig D. Martinson, Billings, MT, for John Kent and Mary Ann Brooks–Mueller.

Alan G. Lance, Attorney General, David G. High, Chief of Civil Litigation, Brian D. Nichols, Deputy Attorneys General, Boise, ID, for State of Idaho.

### ORDER

JOHN L. PETERSON, Chief Judge.

In this adversary proceeding, Debtor/Plaintiff John Kent Mueller ("Mueller"), filed a complaint on May 22, 1997, seeking to have discharged certain tax obligations claimed by Defendant, State of Idaho ("Idaho"). Idaho filed its answer on June 20, 1997, including a general denial of all claims, certain specific denials and affirmative defenses including sovereign immunity. Idaho then filed on July 2, 1997, a motion to dismiss the complaint based on its claimed sovereign immunity, together with a memorandum in support thereof. Mueller filed his brief in opposition to the motion to dismiss on August 7, 1997. The parties having fully articulated their respective positions, the Court deems the motion to dismiss under advisement and ripe for adjudication.

Idaho bases its claim of sovereign immunity on the Supreme Court's ruling in *Seminole Tribe of Florida v. Florida*, —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996),

in which based on the Eleventh Amendment to the United States Constitution, the Court held that in certain circumstances Congress may not abrogate a state's sovereign immunity from suit in a federal forum by private parties where the state does not consent to such suit. Idaho claims the instant circumstances match the criteria set forth in *Seminole* that bar a debtor in bankruptcy from bringing an unconsenting state before a federal court.

Mueller counters that he seeks a determination of liability on certain state taxes owed by two limited liability corporations ("LLCs") in which he had an ownership interest. Mueller contends that the bankruptcy court provides the only forum for efficient determination of this issue and therefore the dischargeability of these claims. Mueller further argues that Idaho's answer in this matter serves as a waiver of its sovereign immunity and an acquiescence in the Court's jurisdiction.

## I.

The parties do not dispute the facts. Idaho has not filed a proof of claim on the taxes owed by John Mueller's two LLCs, which claims arise out of Idaho's assessment against the LLC's for unpaid withholding tax, penalties and interest. Mueller admits that if he is liable for such claims, they are not dischargeable. While the matter is presently pending before an administrative agency of the State of Idaho, Mueller nevertheless filed the instant adversary complaint alleging that he does not suffer personal liability on the taxes in question, and therefore should have them included in his discharge. The instant action then really is not one to determine dischargeability of debt, but one seeking to determine whether Mueller suffers personal liability on Idaho's claim against the LLCs. If Mueller suffers no lia-

bility, no discharge is required; if Mueller does suffer personal liability, no discharge is allowed. Idaho does not want this determination to occur in this forum, however, and from the filing of its answer, has resisted the complaint by asserting sovereign immunity under the Eleventh Amendment to the United States Constitution.

## II.

██ When pressing claims in federal courts, which are courts of limited rather than general jurisdiction, plaintiffs labor under a presumption against federal jurisdiction. *General Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968 (9th Cir.1981). Furthermore, the Drafters of the Eleventh Amendment did so to proscribe the jurisdiction of federal courts the following way:

> The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, or commenced or prosecuted against one to the United States Subjects of any Foreign State.

U.S. Const. Amend XI. The Supreme Court has taught that immunity from suits unconsented to arises inherently from "the nature of [a state's] sovereignty, "noting that "federal jurisdiction over suits against unconsenting states 'was not contemplated by the Constitution when establishing the judicial power of the United States." ' *Seminole*, —— U.S. at ——, 116 S.Ct. at 1122 (quoting *Hans v. Louisiana*, 134 U.S. 1, 15, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890)). Given these strictures, it falls on a plaintiff suing an unconsenting state in a federal case to establish that the defendant state's sovereign immunity does not preclude the federal court's jurisdiction.

██ Bankruptcy Code § 106(a) purports to grant federal courts jurisdiction over states on a variety of bankruptcy issues.[1] In

---

1. Section 106(a) provides:

Notwithstanding any assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928,

929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judg-

order to hold that a Congressional statute such as § 106(a) abrogates sovereign immunity, a court must certify that Congress fully intended to override the guarantees of the Eleventh Amendment. *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985). To satisfy the test, the act must "express [an] intent to abrogate the Eleventh Amendment in unmistakable language in the statute itself" *Id.* at 243, 105 S.Ct. at 3147. It has been held that "[w]ithout question, § 106(a) manifests the requisite intent to abrogate." *In re NVR L.P.,* 206 B.R. 831, 837 (Bankr.E.D.Va.1997). This Court quite agrees with the lucid and tightly reasoned opinion set forth in *In re NVR L.P.* Not only does the clear language of the statute mandate a finding of an intent to abrogate, Congress enacted the latest embodiment of § 106(a) in direct response to the case of *Hoffman v. Connecticut Dep't of Income Maintenance,* 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), which held that the former language of the statute failed to establish Congress' intent to abrogate. *See NVR L.P.,* 206 B.R. at 838.

■ Given this clear intent to abrogate, the question arises whether such abrogation passes constitutional muster. *Seminole* answers this query in the negative. Overruling *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), which had held that the Interstate Commerce Clause granted Congress sweeping power to abrogate states' rights under the Eleventh Amendment, *Id.* at 20, 109 S.Ct. at 2285, *Seminole* set forth the holding that even when Article I of the Constitution "vests in Congress complete lawmaking authority over a particular area [like bankruptcy], the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States." *Seminole,* — U.S. at ——, 116 S.Ct. at 1131. Thus, Congress'

efforts under 11 U.S.C. § 106(a) to abrogate state sovereign immunity are void as unconstitutional. *NVR L.P.* 206 B.R. at 839.

The Fourth Circuit Court of Appeals recently came to an identical conclusion in *Schlossberg v. Maryland (In re Creative Goldsmiths of Washington),* 119 F.3d 1140, 1144–45 (4th Cir.1997), reasoning:

> To apply these principles to a federal statute passed pursuant to the Indian Commerce Clause, U.S. Const. art. I, § 8, cl. 3, which clearly purported to abrogate the states' sovereign immunities, the Court in Seminole posed the fundamental question, "Was the Act in question passed pursuant to a constitutional provision granting Congress the power to abrogate?" *Seminole,* — U.S. at ——, 116 S.Ct. at 1125. The Court answered that question in the negative, explaining:
>
>> Even when the Constitution vests in Congress complete lawmaking authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States. The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.
>
> *Seminole,* — U.S. at —— – ——, 116 S.Ct. at 1131–32. The Court thereby overruled its only prior case finding congressional authority to abrogate state sovereign immunity pursuant to an Article I power—a plurality opinion in *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), that had found such power in the Commerce Clause, U.S. Const. art. I, § 8, cl. 3.
>
> Because the holding in *Seminole* extended to restrict all federal jurisdiction over

ment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.
(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate non-

bankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.
(5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or non-bankruptcy law.

the states based on Article I powers, we hold in this case that Congress has no authority under the Bankruptcy Clause, U.S. Const. art. I, § 8, cl. 4, to abrogate state sovereign immunity in federal courts. We find unpersuasive the argument of the United States that the Bankruptcy Clause's provision for the enactment of "uniform laws on the subject of Bankruptcies," id. (emphasis added), requires Congressional powers under this clause to be distinguished from other Article I powers for purpose of reconciliation with the restraints imposed by the Eleventh Amendment. As Justice Marshall observed in his dissenting opinion in *Hoffman*,

> I see no reason to treat Congress' power under the Bankruptcy Clause any differently [than the Commerce Clause power, as addressed in Union Gas], for both constitutional provisions give Congress plenary power over national economic activity. See The Federalist No. 42, p. 271 (C. Rossiter ed. 1961) (J. Madison) (describing the Bankruptcy Clause and the Commerce Clause as "intimately connected").

Hoffman, 492 U.S. at 111, 109 S.Ct. at 2828 (Marshall, J., dissenting).

The Fourth Circuit's decision does not constitute binding precedent on this Court. Nevertheless, the Ninth Circuit Bankruptcy Appellate Panel has held, "we should 'give most respectful consideration to the decisions of the other Courts of Appeals and follow them whenever we can.'' *In re Camilli*, 182 B.R. 247, 251 (9th Cir. BAP 1995) (citing *Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1123 (7th Cir.1987)); *accord, Taffi v. United States (In re Taffi)*, 68 F.3d 306, 308 (9th Cir.1995) (adopting "a cautionary rule, counseling against creating intercircuit conflicts")). Given the cautionary rule, and the Fourth Circuit's persuasive analysis, this Court hereby adopts its holding.

Notwithstanding Congress' lack of power to abrogate sovereign immunity under Article I of the Constitution, it has been held that the Fourteenth Amendment trumps the Eleventh Amendment, and gives Congress the power to abrogate sovereign immunity under the Privileges and Immunities Clause.

*Wyoming v. Straight (In re Straight)*, 209 B.R. 540, 555 (D.Wyo.1997); *Mather v. Oklahoma Employment Sec. Comm'n (In re Southern Star Foods)*, 190 B.R. 419 (Bkrtcy. E.D.Okla.1995); *Headrick v. Georgia (In re Headrick)*, 200 B.R. 963 (Bankr.S.D.Ga.1996). This analysis notes that the holding of *Seminole* recognizes Congressional power to abrogate sovereign immunity pursuant to § 5 of the Fourteenth Amendment, and maintains that in enacting the Bankruptcy Code, Congress did just that. *See, e.g., Straight*, 209 B.R. at 550–551. Since this power addresses only a discrete type of federal action, however, specifically, actions to prohibit state sponsored discrimination based on an inherent status such as race or sex, the majority of courts to consider the issue have not adopted the *Straight* analysis in the bankruptcy context. *See Straight*, 209 B.R. at 554–555 (citing list of cases). For instance the court in *NVR L.P.* held:

> It is true that "the constitutionality of action taken by Congress does not depend on recitals of the power which it undertakes to exercise." *Woods v. Cloyd W. Miller Co.*, 333 U.S. 138, 144, 68 S.Ct. 421, 424, 92 L.Ed. 596 (1948). In particular, the Supreme Court has held that Congress need not "anywhere recite the words 'section 5' or 'Fourteenth Amendment' or 'equal protection'" when legislating under the authority granted by that Amendment. *Equal Employment Opportunity Comm'n v. Wyoming*, 460 U.S. 226, 243 n. 18, 103 S.Ct. 1054, 1064 n. 18, 75 L.Ed.2d 18 (1983). Nevertheless, "[b]ecause such legislation imposes congressional policy on a State involuntarily, and because it often intrudes on traditional state authority, [courts] should not quickly attribute to Congress an unstated intent to act under its authority to enforce the Fourteenth Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 16, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981).

Most courts since Seminole have refused to follow the rationale of *Southern Star Foods*. Their concerns have been stated most succinctly by the Sixth Circuit Court of Appeals: "If we were to say that an act is valid if it is rationally related to achieving equal protection of the laws, then § 5

becomes a license to Congress to pass any sort of legislation whatsoever." *Wilson–Jones v. Caviness,* 99 F.3d 203, 209 (6th Cir.1996). For this reason, courts have held that, "if Congress does not explicitly identify the source of its power under the Fourteenth Amendment, there must be something about the act connecting it to recognized Fourteenth Amendment aims," specifically those concerned with "discrimination by state actors on the basis of race or gender." *Id.* at 210; *see also Taylor v. Virginia Dep't of Transp.,* 951 F.Supp. 591, 597–98 (E.D.Va.1996). *NVR L.P.* 206 B.R. at 840–841. In *Creative Goldsmiths,* the Fourth Circuit reached a like determination. *Creative Goldsmiths,* 119 F.3d at 1146–48.

■ Furthermore, in a recent decision declaring the Religious Freedom Restoration Act a constitutionally infirm overreach of Congressional power, the Supreme Court held that the Fourteenth Amendment does not give Congress the power to simply legislate around restrictive Constitutional mandates in a plenary fashion. *City of Boerne v. Flores,* —— U.S. ——, ——, 117 S.Ct. 2157, 2168, 138 L.Ed.2d 624 (1997). As the Court instructed:

> Under this approach, it is difficult to conceive of a principle that would limit congressional power. Shifting legislative majorities could change the Constitution and effectively circumvent the difficult and detailed amendment process contained in Article V.

*Id.* (citations omitted). Thus, this Court holds that even if Congress could do so—which is doubtful given the language of *Boerne*—it did not enact § 106(a) of the Bankruptcy Code under the authority of § 5 of the Fourteenth Amendment. Given this analysis and conclusion, the Court remains persuaded that the § 106(a) attempt to abrogate state sovereign immunity fails constitutional muster.

■ The Eleventh Amendment applies equally to all cases in "law or equity." U.S. Const., Amendment XI. This raises the question of whether a case in which the plaintiff seeks not monetary damages but a determination of personal liability on a corporate tax debt constitutes a "suit." The Court holds that it does. In a bankruptcy court action to determine liability to a state taxing authority where the state has not filed a proof of claim to which the debtor can object, the debtor seeks a remedy in the nature of a declaratory judgment, the determination of which will constitute res judicata or collateral estoppel in any other forum. The debtor would opt for this because the state, by not opting to participate in the distribution of the bankruptcy estate by filing a proof of claim, will likely pursue the matter in its own courts. Thus, by filing for an adjudication of liability in bankruptcy court, the debtor seeks to have liability on the debt determined in what the debtors may see, for a variety of reasons, as a more advantageous forum.

The Supreme Court has addressed this very situation in a non-bankruptcy context, and held that such an action constitutes a "suit" for purposes of the Eleventh Amendment. *Green v. Mansour,* 474 U.S. 64, 73, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985). In *Green,* the plaintiffs sought a declaratory judgment against a state for violating federal civil rights law even though they did not claim a continuing violation of federal law, and where the state statute in question had been repealed, obviating the possibility of future violations. *Id.* at 72–73, 106 S.Ct. at 427–29. The declaratory judgment, therefore, could not have functioned to impose an injunction against current or future state acts, but only as res judicata or collateral estoppel on the issue of liability in a state court, wherein an action on the underlying claim could have considered only the computation of damages. *Id.*

An adversary complaint to determine a debtor's personal liability on a limited liability corporation's tax debt differs somewhat from the situation in *Green* in that if the debtor/plaintiff should prevail against the defendant state, the plaintiff, as the party seeking to be freed of potential liability, cannot use the judgment to support a damage award by a state court. The principle underlying the *Green* decision, however, prohibits litigants from filing actions against a state in federal courts in hopes of gaining a judgment of no practical use other than as res judicata

or collateral estoppel to preclude adjudication on the merits by the state court. Moreover, while the Supreme Court has stated "the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment," *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974), this language clearly does not preclude sovereign immunity in other kinds of cases. In making this ruling, the Supreme Court simply labored to clarify the distinction between a suit for damages—barred by the Eleventh Amendment—and one under *Ex Parte Young,* enjoining a state official individually from continuing to violate a federal statute— allowed by the Eleventh Amendment. *Id.* at 663–671, 94 S.Ct. at 1355–60. Moreover, the leading case on sovereign immunity in the instant context, *Seminole,* did not involve a suit for money damages or equitable relief. *Seminole,* —— U.S. at ——, 116 S.Ct. at 1121. Nevertheless, the ruling barred the suit under the Eleventh Amendment. Thus, this Court holds that an action to determine personal liability for a corporate debt, even where the plaintiff, if successful, cannot seek money damages, constitutes a "suit" for purposes of the Eleventh Amendment.

■ Finally, even after filing its answer, a state may initially assert Eleventh Amendment protection at any time during a proceeding at the trial level, or later on appeal. *Edelman,* 415 U.S. at 678–679, 94 S.Ct. at 1363–64; *Creative Goldsmiths,* 119 F.3d at 1144.

> The Eleventh Amendment declares a policy and sets forth an explicit limitation on federal judicial power of such compelling force that [the Supreme] Court will consider the issue arising under this Amendment in this case even though urged for the first time in [the Supreme] Court.

*Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350–51, 89 L.Ed. 389 (1945).

### III.

Applying the foregoing analysis to the case at bar disposes of the motion to dismiss in Idaho's favor. Mueller must show that the Court has jurisdiction to adjudicate the instant adversary complaint. Congress' attempt to give the Court jurisdiction through 11 U.S.C. § 106(a) and make Idaho amenable to suit, however, violates the Eleventh Amendment's provision to the state's of a wide ranging sovereign immunity. Moreover, the only Constitutional provision the Court could use to overcome such immunity, § 5 of the Fourteenth Amendment, does not apply to this context.

■ Further, while Mueller contends that this action does not fall within the meaning of "suit" as used in the Eleventh Amendment, the Court determines that an adversary complaint such as the one at bar does constitute a prohibited "suit." Mueller seeks to bring Idaho before the Court involuntarily to face adjudication of whether it has a valid tax claim against Mueller. Since Mueller admits that if he does suffer liability under the claim, it is not dischargeable, and since if he does not suffer liability his discharge will not apply to the debts of the LLC entities, the only possible use of such a judgment would be for purposes of res judicata or collateral estoppel in a state court in an action by Idaho to determine whether Mueller suffers personal liability. This result would in effect put the Court in the position of interpreting substantive issues of Idaho tax law, and preventing the Idaho state courts from doing so notwithstanding their greater experience and expertise in this area. In this case, the Eleventh Amendment forecloses such an undesirable result.

■ Finally, Mueller contends Idaho's answer precludes Idaho's subsequent sovereign immunity affirmative defense, notwithstanding the fact that Idaho plead the defense affirmatively in its answer. Even had Idaho not so pleaded, however, in light of the Supreme Court's holding in *Ford Motor Co.,* 323 U.S. at 464, 65 S.Ct. at 350–51, Mueller's argument lacks all merit. Sovereign immunity may initially be raised at any time, at any level.

Given the foregoing, the Court holds that it lacks jurisdiction to adjudicate Mueller's complaint. Only a state venue has the necessary jurisdiction to provide relief against this

744

defendant. Thus, Mueller will have to pursue administrative and judicial remedies provided by Idaho state law in Idaho venues.

IT IS ORDERED State of Idaho's motion to dismiss, filed July 2, 1997, is granted; and this adversary proceeding is dismissed.