**In re Gregory R. MORRELL and Carol H. Morrell, Debtors.**

**Gregory R. MORRELL and Carol H. Morrell, Plaintiffs,**

**v.**

**FRANCHISE TAX BOARD, An Agency of the State of California, Defendant.**

Bankruptcy No. SA 97–11910 JR.
Adversary No. SA 97–1527 JR.

United States Bankruptcy Court,
C.D. California,
Santa Ana Division.

Dec. 19, 1997.

Amanda C. Sommerfeld, Valensi, Rose & Magaram, Los Angeles, CA, for Plaintiffs.

Leslie Branman Smith, Deputy Attorney General, San Diego, CA, for Defendant.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

### I. INTRODUCTION

Gregory and Carol Morrell ("Debtors") filed a complaint (the "Complaint") under Bankruptcy Code (the "Code")[1] § 523(a)(1) for determination of dischargeability of debt

---

1. The Code is set forth in 11 U.S.C. §§ 101–1330

against the Franchise Tax Board ("FTB"), an agency of the State of California. FTB filed a motion (the "Motion") to dismiss the Complaint, alleging that this court lacks jurisdiction over the proceeding under the Eleventh Amendment of the United States Constitution. I took the matter under submission to decide whether this court has jurisdiction over this adversary proceeding.

### II. JURISDICTION

■ Courts have the "power to interpret the language of the jurisdictional instrument and its application to an issue before the court." *Stoll v. Gottlieb*, 305 U.S. 165, 171, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938). The determination of whether jurisdiction exists is one which federal courts must consider. *Demery v. Kupperman*, 735 F.2d 1139, 1149 n. 8 (9th Cir.1984) (holding that even if neither party has raised an Eleventh Amendment objection to a federal court's subject matter jurisdiction, the court has an obligation to fully consider the issue sua sponte). As "the eleventh amendment is a limitation on federal subject-matter jurisdiction," *id.*, this court can properly consider whether there is subject matter jurisdiction over the Complaint.

### III. FACTS

On February 12, 1997, Debtors filed a voluntary chapter 7 petition. FTB did not file a proof of claim in Debtors' case. On May 16, 1997, Debtors filed the Complaint against FTB seeking a determination that its debt to FTB was dischargeable. On June 13, 1997, FTB filed its answer to the Complaint, asserting that this court lacks subject matter jurisdiction over this matter. On June 19, 1997, FTB filed the Motion.

### IV. DISCUSSION

The Eleventh Amendment to the United States Constitution provides:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citi-

---

(1994).

zens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Under the Eleventh Amendment, citizens are barred from bringing suits in federal courts against an unconsenting state. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984); *Papasan v. Allain*, 478 U.S. 265, 276, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986). Furthermore, "[s]tate immunity extends to state agencies and to state officers, who act on behalf of the state and can therefore assert the state's sovereign immunity." *Natural Resources Defense Council v. California Dep't of Transp.*, 96 F.3d 420, 421–22 (9th Cir.1996) (citing *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142–45, 113 S.Ct. 684, 686–88, 121 L.Ed.2d 605 (1993); *Pennhurst*, 465 U.S. at 101, 104 S.Ct. at 908–09 (1984)).

*A. A Complaint To Determine The Dischargeability Of A Tax Claim In The Bankruptcy Court Is Barred By The Eleventh Amendment.*

■ While a suit brought in federal court for money damages against a state is clearly barred under the Eleventh Amendment,[2] it is less clear whether a complaint to determine dischargeability is prohibited by the Eleventh Amendment.

That issue was addressed in *Mueller v. Idaho (In re Mueller)*, 211 B.R. 737 (Bankr. D.Mont.1997), where the bankruptcy court, relying on *Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985), held that an action to determine dischargeability is a "suit" for purposes of the Eleventh Amendment.

The essence of the *Green* decision is that declaratory relief is inappropriate if the requested relief would "have much the same effect as a full-fledged award of damages or restitution by the federal court." *Green* at 474 U.S. at 73, 106 S.Ct. at 428. The Ninth

Circuit has analyzed *Green* as holding that "declaratory relief is not available if its sole efficacy would be as *res judicata* in a subsequent state court action *for retroactive damages or restitution.*" *Native Village of Venetie I.R.A. Council v. Alaska*, 944 F.2d 548, 552 (9th Cir.1991) (citing the holding of *Green*) (emphasis added).

However, in making its determination that a complaint to determine dischargeability falls within the ambit of the Eleventh Amendment, the *Mueller* court applied the *Green* holding without referencing whether the effect of the federal court action will be one of a monetary judgment in the state court. The *Mueller* court held that "[t]he principle underlying the *Green* decision ... prohibits litigants from filing actions against a state in federal courts in hopes of gaining a judgment of no practical use other than as *res judicata* or collateral estoppel to preclude adjudication on the merits by the state court." *Mueller*, 211 B.R. at 741–42.

While no other court has extended the holding of *Green* in this exact manner, at least one court has similarly construed *Green* broadly. In *Meza v. Lee*, 669 F.Supp. 325, 329 (D.Nev.1987), the court stated, "[t]he Supreme Court has recently found that declaratory judgment actions against the states are also barred by the eleventh amendment." An Action to determine dischargeability has been likened to a declaratory judgment.[3] *Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin)*, 179 B.R. 913, 918 (Bankr.E.D.Cal. 1995) (stating that a judgment to determine nondischargeability under § 523 would be a declaratory judgment). However, even if we equate a dischargeability determination action to a declaratory judgment action that does not seek money damages or have a *res judicata* effect for money damages in state court, the case law has consistently held that any action against the state is barred unless the state waives its Eleventh Amendment

---

**2.** *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974).

**3.** The Ninth Circuit has held that:

A declaratory judgment offers a means by which rights and obligations may be adjudicated in cases "brought by any interested party" involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy and in cases where a party could sue for coercive relief has not yet done so.

*Seattle Audubon Soc'y v. Moseley*, 80 F.3d 1401, 1405 (9th Cir.1996).

protection or the action seeks to enjoin future conduct of a state official per *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *Idaho v. Coeur d'Alene Tribe of Idaho,* —— U.S. ——, —— – ——, 117 S.Ct. 2028, 2033–34, 138 L.Ed.2d 438 (1997); *Puerto Rico Aqueduct and Sewer Authority,* 506 U.S. at 144–46, 113 S.Ct. at 685–89; *Strahan v. Coxe,* 127 F.3d 155, 166–67 (1st Cir.1997).

Clarifying the scope of the Eleventh Amendment was the main objective of the *Seminole Tribe of Florida v. Florida* decision. 517 U.S. 44, 71–74, 116 S.Ct. 1114, 1131–32, 134 L.Ed.2d 252 (1996). In *Seminole,* the Court held that "we have often made it clear that the relief sought by Plaintiff suing a State is irrelevant to the question of whether the suit is barred by the Eleventh Amendment." *Id.* at 58, 116 S.Ct. at 1124. The Court went on to hold that:

> The Eleventh Amendment does not exist solely in order to "preven[t] federal court judgments that must be paid out of a State's treasury," [citation omitted]; it also serves to avoid the "indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Puerto Rico Aqueduct and Sewer Authority,* 506 U.S. at 146, 113 S.Ct., at 689 (internal quotation marks omitted).[4]

*Seminole,* 517 U.S. at 58, 116 S.Ct. at 1122. The Court reiterated that the core principle behind the Eleventh Amendment is that states cannot be sued without their consent.[5] *Id.*

The Eighth Circuit, relying on the above-quoted passage in *Seminole,* has held that "[t]he immunity recognized by the Eleventh Amendment extends to both suits for monetary damages and those for declaratory or injunctive relief...." *In re SDDS, Inc.,* 97 F.3d 1030, 1035 (8th Cir.1996). Further-

more, as the *Mueller* court pointed out, "the leading case on sovereign immunity in the instant context [*Seminole*] ... did not involve a suit for money damages or equitable relief." 211 B.R. at 743.

■ Debtors argue that Code § 106(a), which purports to abrogate sovereign immunity for purposes of a complaint to determine dischargeability, is constitutional in light of *Seminole.* That section states: "Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to ... [section] ... 523." 11 U.S.C. § 106(a).

However, in *Seminole,* the Supreme Court held that Congress cannot abrogate state sovereign immunity by legislation, even if the legislation is passed under Congress' Article I powers. 517 U.S. at 71–74, 116 S.Ct. at 1131–32. Since *Seminole,* several bankruptcy courts, as well as the Fourth and Fifth Circuits, have held that Congress' attempt to abrogate state sovereign immunity under Code § 106(a) is unconstitutional as an invalid exercise of power under Article 1, § 8, clause 4. *Department of Transp. and Development v. PNL Asset Management Co., Turner (In re Fernandez),* 123 F.3d 241, 246 (5th Cir.1997); *Schlossberg v. Maryland (In re Creative Goldsmiths of Washington),* 119 F.3d 1140, 1147 (4th Cir.1997); *In re Mueller,* 211 B.R. at 740–41; *In re NVR, L.P.,* 206 B.R. 831, 834 (Bankr.E.D.Va.1997); *Sparkman v. Florida Dep't of Revenue (In re York–Hannover Devs., Inc.),* 201 B.R. 137, 141 (Bankr.E.D.N.C.1996).

Under *Seminole,* the Supreme Court articulated a two-part test by which Congress may validly abrogate a state's Eleventh Amendment immunity. 517 U.S. at 55–56, 116 S.Ct. at 1123. First, Congress must

---

4. The full quotation from *Puerto Rico Aqueduct and Sewer Authority* is: "The very object and purpose of the Eleventh Amendment were to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." 506 U.S. at 146, 113 S.Ct. at 689 (citation omitted).

5. In *Seminole,* the Supreme Court held that "we have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition ... which it confirms."

[citation omitted]. That presupposition, first observed over a century ago in *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), has two parts: first, that each State is a sovereign entity in our federal system; and second, that "[i]t is inherent in the nature of sovereignty not to be amendable to the suit of an individual without its consent." *Id.* at 54, 116 S.Ct. at 1122 (citations and some internal quotations omitted).

have "unequivocally expressed its intent to abrogate the immunity." *Id.* Second, Congress must have "acted pursuant to a valid exercise of its power." *Id.*

Under the Code, the first-prong is satisfied because § 106(a) manifests Congress' clear intent to abrogate sovereign immunity. *State of California Employment Dev. Dep't v. Taxel (In re Del Mission Ltd.),* 98 F.3d 1147, 1152 n. 6 (9th Cir.1996); *Fernandez,* 123 F.3d 241, 242–43, *Creative Goldsmiths,* 119 F.3d at 1147. Indeed, Debtors acknowledge that the 1994 Amendments to § 106 were intended as an express abrogation of sovereign immunity.

Under *Seminole*'s second prong, Congress's valid exercise of power in limiting sovereign immunity has historically stemmed from either Article I, § 8 or the Fourteenth Amendment, § 5. 517 U.S. at 58–60, 116 S.Ct. at 1125. However, in *Seminole,* the Supreme Court expressly overruled the key case in which Congress' abrogation of the states' Eleventh Amendment immunity under the Interstate Commerce Clause, Art. I, § 8, cl. 3, had been upheld. *Id.,* 517 U.S. at 58–70, 116 S.Ct. at 1124–1131, *overruling Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989). The Supreme Court also held that Congress may not use its Article I powers to abrogate a state's sovereign immunity. *Seminole,* 517 U.S. at 70–75, 116 S.Ct. at 1131–32.

> Even when the Constitution vests in Congress complete lawmaking authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States. The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.

*Id.* Debtors do not contest this aspect of *Seminole.*

▇ Debtors' primary argument is that ¶ 106 was enacted as a valid exercise of Congress' power under § 5 of the Fourteenth Amendment and is, therefore, constitutional.

Unlike Congress' bankruptcy power under Article I, the *Seminole* Court acknowledged that Congress continues to retain power under § 5 of the Fourteenth Amendment to abrogate states' immunities. *Id.* at 58–60, 116 S.Ct. at 1125 (holding that the Fourteenth Amendment "intrude[s] upon the province of the Eleventh Amendment"). The *Seminole* Court examined the legislative history of the Fourteenth Amendment and found that the Fourteenth Amendment was an express expansion of federal power "at the expense of state autonomy, [which] fundamentally altered the balance of state and federal power struck by the Constitution." *Id.*

The threshold requirement for legislation to be valid under this exception is that Congress enacted the legislation under § 5 of the Fourteenth Amendment. *Creative Goldsmiths,* 119 F.3d at 1146 (citing *Seminole,* 517 U.S. at 58–60, 116 S.Ct. at 1125). Here, Debtors argue that the uniform laws of the Code were enacted to provide citizens with the privileges and immunities of federal citizenship under the Fourteenth Amendment, § 5. Notwithstanding the fact that being a debtor in bankruptcy is not a privilege or immunity of citizenship of the United States,[6] the threshold requirement that the Code, including § 106, be enacted under the Fourteenth Amendment, § 5 is not met.

In *Fernandez,* the appellant raised the similar argument that Congress had the authority under § 5 of the Fourteenth Amendment to enforce a uniform system of bankruptcy as a privilege of federal citizenship. 123 F.3d 241, 245–46. The court rejected the argument and held that "there is no evidence that the 1994 Bankruptcy Act was passed under the Fourteenth Amendment or any constitutional provision other than the bankruptcy power of Article I, § 8, cl. 4." *Id.* 123 F.3d at 245–46.

The Fourth Circuit has also held that "there is no evidence to indicate that in enacting the Bankruptcy Reform Act of 1994, Congress acted under § 5 of the Fourteenth

---

6. *Kish v. Verniero (In re Kish),* 212 B.R. 808, 816–17 (D.N.J.1997); *In re NVR, L.P.,* 206 B.R. 831, 840–43 (Bankr.E.D.Va.1997).

Amendment." *Creative Goldsmiths*, 119 F.3d at 1146. The court went on to state that "[w]e will not presume that Congress intended to enact a law under a general Fourteenth Amendment power to remedy an unspecified violation of rights when a specific, substantive Article I power clearly enabled the law." *Id.*

Accordingly, Debtors' claim that Congress has a valid basis for abrogating the states' sovereign immunity under § 5 of the Fourteenth Amendment, where the Code, and in particular § 106, was not specifically enacted under the Fourteenth Amendment, § 5, is invalid.

*B.   The Complaint May Be Amended.*

 Debtors request that they be allowed to amend the Complaint in accordance with *Ex Parte Young* to name a state officer as the proper defendant.

The Ninth Circuit examined *Seminole's* treatment of *Ex Parte Young* and concluded that "the Ex parte Young exception to the Eleventh Amendment immunity applies to violations of federal statutory rights." *Natural Resources Defense Council*, 96 F.3d at 422 (citing *Seminole*, 517 U.S. at 71 n. 14, 116 S.Ct. at 1131 n. 14.) In so holding, the Ninth Circuit emphasized that there must be an action by the state officer that violates federal law in order for *Ex Parte Young* to apply. *Id.* at 422.

> The doctrine of Ex parte Young is premised on the notion that a state can not [sic] authorize a state officer to violate the Constitution and laws of the United States. Thus, an action by a state officer that violates federal law is not considered an action of the state, and therefore, is not shielded from suit by the state's sovereign immunity.

*Id.* (citing *Pennhurst*, 465 U.S. at 102, 104 S.Ct. at 909; *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714). In addition, the Ninth Circuit held that *Ex Parte Young* limits plaintiffs to a request for prospective injunctive relief that governs the state official's future conduct. *Id.*

Therefore, Debtors can amend the Complaint if they can allege that a state officer has acted in violation of the Code and prospective injunctive relief is appropriate.

## V.   CONCLUSION

This court concludes that based on the allegations in the Complaint, the Eleventh Amendment precludes this court from exercising jurisdiction over this proceeding. Debtors may amend the Complaint as stated above.