In re Harry H. MITCHELL and June M. Mitchell, Debtors.

Harry H. MITCHELL and June M. Mitchell, Appellants,

v.

CALIFORNIA FRANCHISE TAX BOARD; California State Board of Equalization, Appellees.

BAP No. CC–97–1350–OBMe.
Bankruptcy No. SB 95–25776 RA.
Adversary No. 96–01918 RA.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 18, 1998.

Decided July 15, 1998.

Harry H. Mitchell, Palm Desert, CA, pro se.

David S. Chaney, Assistant Attorney General, Los Angeles, CA, for Appellees.

Before: OLLASON, BRANDT and MEYERS, Bankruptcy Judges.

### *OPINION*

OLLASON, Bankruptcy Judge.

### OVERVIEW

Harry and June Mitchell ("Debtors") filed an adversary complaint in their chapter 7[1] bankruptcy case against the California Franchise Tax Board ("FTB") and California Board of Equalization ("Board") (together the "State"). Debtors sought a declaratory judgment that certain deficient income taxes were dischargeable and discharged. In addition, they sought monetary damages for the State's alleged violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution. The State asserted the defense of Eleventh Amendment sovereign immunity. The bankruptcy court granted the State's motion for judgment on the pleadings and dismissed the complaint for lack of jurisdiction. We AFFIRM.

### FACTS AND PROCEEDINGS IN BANKRUPTCY COURT

Debtors filed a voluntary bankruptcy petition on November 9, 1995. They allegedly listed the FTB as one of their creditors to whom they owed approximately $300,000 in income taxes and interest. In 1992, the FTB had notified Debtors of proposed assessments for deficient income taxes for the years 1973, 1974, 1976, 1977 and 1980. In the same year, Debtors requested a hearing before the FTB and the request was denied. The proposed assessments were not final at the time Debtors filed the bankruptcy petition.

The FTB did not file a proof of claim in Debtors' bankruptcy case. On February 29, 1996, the bankruptcy court issued a dis-

---

**1.** Unless otherwise indicated, references to "chapter," "section § " or "code" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330. References to "Fed.R.Bankr.P." are to the Federal Rules of Bankruptcy Procedure, 1001–9036, which make applicable certain Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

charge order. Following the discharge order, the Board set a hearing on Debtors' appeal of the proposed assessments. On December 16, 1996, the bankruptcy court entered a temporary restraining order to stay the Board's proceedings against Debtors based on prepetition tax claims, and an order to show cause regarding a preliminary injunction.

In January of 1997, Debtors filed a first amended complaint against the FTB and the Board to "Determine Dischargeability of Debt and Other Relief," invoking the bankruptcy court's core and pendent jurisdiction. Debtors alleged that the FTB had "attempted to extract an income tax from [them] by issuing fraudulent assessments" and denied them their right to a protest hearing. They disputed their liability for the debt.

In count one Debtors sought a determination that the debt owed to FTB was discharged pursuant to the February 29, 1996 discharge order. They alleged in paragraph 29 that the debt to the State "was a dischargeable debt under 11 U.S.C. Section 523 ...." They further stated in paragraph 35: "Plaintiff's alleged debt to defendant FTB was discharged in the Discharge Order of the Bankruptcy Court."

In count two, Debtors asserted claims of common law fraud and violations of the California Revenue and Taxation Code. In count three, Debtors alleged that the FTB and the Board violated § 1 of the Fourteenth Amendment by (1) depriving them of property without due process of law, and (2) denying them equal protection of the laws.

As relief, Debtors sought a judgment that the debt allegedly owing to the FTB was dischargeable and was discharged. Debtors further sought general, special and punitive damages, and attorney's fees and costs. They also sought to enjoin any action by the Board while the adversary proceeding was pending.

The State answered the complaint. In paragraph 3, the State admitted the allegation of Debtors' paragraph 35 that the tax debt was discharged. However, in paragraph 2, the State denied the allegation of Debtors' paragraph 29 that the debt was dischargeable under § 523. In addition, the State answered in their paragraph 14 that "the [FTB's] claim at the time of the filing of the debtors' Bankruptcy Petition was not finally assessed but was assessable and therefore nondischargeable."

The State also asserted as affirmative defenses: (1) failure to state a claim; and (2) to the second and third counts only, that the claims were barred by the Eleventh Amendment.

On March 7, 1997, after considering supplemental briefing in the matter of the preliminary injunction, the bankruptcy court issued an order denying a preliminary injunction.

On April 3, 1997, the State filed a motion for judgment on the pleadings. The State argued that the complaint should be dismissed because: (1) it had not waived its Eleventh Amendment immunity; (2) Congress could not abrogate its sovereign immunity through code provisions, and, thus; (3) the bankruptcy court lacked personal jurisdiction over it.[2]

---

**2.** The State moved to dismiss pursuant to Fed. R.Bankr.P. 7012/Fed.R.Civ.P. 12(b)(2) for lack of jurisdiction over the person. We believe the appropriate standard of review is whether the bankruptcy court had subject matter jurisdiction to hear the complaint against the State because it properly asserted its sovereign immunity, and dismissal was proper under Fed.R.Bankr.P. 7012/Fed.R.Civ.P. 12(b)(1). See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 53, 75–76, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (affirming the Eleventh Circuit Court of Appeal's dismissal for lack of subject matter jurisdiction). Lack of subject matter jurisdiction may be raised at any time during the pendency of the action. Fed. R.Bankr.P. 7012/ Fed.R.Civ.P. 12(h)(3).

The Eleventh Amendment "enacts a sovereign immunity from suit." Idaho v. Coeur d'Alene Tribe of Idaho, — U.S. —, —, 117 S.Ct. 2028, 2033, 138 L.Ed.2d 438, 446 (1997). Sovereign immunity is a "constitutional limitation on the federal judicial power established in Art. III." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Without the State's consent to suit, the judicial power granted by the constitution to the federal courts " 'does not embrace authority to entertain a suit brought by private parties against a State ....' " Pennsylvania v. Union Gas Co., 491 U.S. 1, 38, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) (J. Scalia, dissenting in part) (quoting

Debtors opposed the motion. A hearing on the motion took place on April 25, 1997, at which time the bankruptcy court expressed its opinion that it lacked jurisdiction over the State without its consent, and the code could not abrogate the State's sovereign immunity, pursuant to the opinion of the Supreme Court in *Seminole*.[3] On April 29, 1997, the bankruptcy court entered its order for judgment on the pleadings in favor of the State and for dismissal of Debtors' complaint for lack of jurisdiction; Debtors timely appealed.

## ISSUES

1. Whether count one of the complaint, which sought a judgment that the tax debt was dischargeable and discharged, was a "suit" against the State that was prohibited by the Eleventh Amendment.

2. Whether the State waived its sovereign immunity defense as to count one by (1) failing to raise the sovereign immunity defense to that count in the answer, or (2) by admitting to Debtors' allegation that the debt had been discharged.

3. Whether the bankruptcy court erroneously gave retroactive effect to the holding of *Seminole*.

4. Whether Debtors' Fourteenth Amendment claims trumped the State's Eleventh Amendment immunity.

## STANDARD OF REVIEW

■ A judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) is reviewed *de novo*. *George v. Pacific–CSC Work Furlough*, 91 F.3d 1227, 1229 (9th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 746, 136

L.Ed.2d 684 (1997). In considering a motion for judgment on the pleadings, all factual allegations in the nonmovant's pleadings are taken as true and all contravening assumptions in the movant's pleadings are taken as false. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir.1989). A judgment on the pleadings is appropriate when, even if all allegations in the complaint are true, the moving party is entitled to judgment as a matter of law. *Westlands Water Dist. v. Firebaugh Canal*, 10 F.3d 667, 670 (9th Cir.1993).

■ Whether the State has asserted its sovereign immunity in a particular suit is, in the first instance, a question of subject matter jurisdiction and a question of law, reviewable *de novo*. *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988), *cert. denied*, 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989). The party bringing the action in federal court bears the burden of establishing the court's jurisdiction. *Lord v. Babbitt*, 991 F.Supp. 1150, 1156 (D.Alaska 1997). In addition, the interpretation of statutory provisions is reviewed under the *de novo* standard of review. *In re Germaine*, 152 B.R. 619, 622 (9th Cir. BAP 1993).

## DISCUSSION

The State contends that it is immune from Debtors' suit. Sovereign immunity is guaranteed to the State by the Eleventh Amendment, which provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citi-

---

*Ex parte New York*, 256 U.S. 490, 497, 41 S.Ct. 588, 65 L.Ed. 1057 (1921)).

Case law variously holds that the Eleventh Amendment bars: (1) a court's subject matter jurisdiction over the suit, *Demery v. Kupperman*, 735 F.2d 1139, 1149 n. 8 (9th Cir.1984), *cert. denied sub nom. Rowland v. Demery*, 469 U.S. 1127, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985); (2) its assertion of personal jurisdiction over the State, *In re PEAKSolutions Corp.*, 168 B.R. 918, 922 & n. 10 (Bankr.D.Minn.1994); or (3) both subject matter and personal jurisdiction, *See In re Neary*, 220 B.R. 864, 865 n. 1 (Bankr.E.D.Pa. 1998) (exercising the court's inherent authority to determine its jurisdiction over "both the subject matter and the parties involved"); or (4)

federal question jurisdiction, *In re Prairie Island Dakota Sioux*, 21 F.3d 302, 304 (8th Cir.1994) (holding that while sovereign immunity is jurisdictional, it is "not of the same character as subject matter jurisdiction").

The confusion lies in the nature of sovereign immunity, whose "precise status has never been defined." *Union Pacific R. Co. v. Burton*, 949 F.Supp. 1546, 1550–51 (D.Wyo.1996) (citing 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice And Procedure § 3524 (2d ed.1984)).

**3.** *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

zens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. AMEND. XI.

The Eleventh Amendment limits Article III judicial power, denying to federal courts "authority to entertain a suit brought by private parties against a state without its consent." *Ford Motor Co. v. Dep't of Treasury of Indiana*, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945). It reflects a broad principle of sovereign immunity which also extends to protect a State from suits brought without the State's consent by the State's own citizens, *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and suits invoking the federal-question jurisdiction of Article III courts. *Coeur d'Alene*, —— U.S. at ——, 117 S.Ct. at 2033, 138 L.Ed.2d at 447 (citing *Seminole*); *Sofamor Danek Group, Inc. v. Brown*, 124 F.3d 1179, 1183 (9th Cir.1997).

Debtors' complaint named state agencies. Unless the State waives immunity and consents to suit in federal court, there is only one way to divest the State of its sovereign immunity and hale it into federal court— Congress can abrogate the State's immunity through appropriate legislation.[4] The inquiry whether Congress properly abrogated the State's immunity requires a two-part test: "first, whether Congress has 'unequivocally expresse[d] its intent to abrogate the immunity'; and second, whether Congress has acted 'pursuant to a valid exercise of power.'" *Seminole*, 517 U.S. at 55, 116 S.Ct. 1114 (quoting *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)) (citation omitted).

Congress clearly expressed its intent to abrogate the States' Eleventh Amendment immunity by enacting § 106 of the code pursuant to its Article I powers and the Bankruptcy Clause.[5] Section 106(a) provides that "sovereign immunity is abrogated as to a governmental unit" with respect to proceedings brought, *inter alia*, for determinations of (1) tax liability under § 505; and (2) dischargeability of a debt under § 523—sections which are implicated by Debtors' complaint in this case.[6]

■ However, to the extent that Congress exercised its Article I powers to enact the uniform bankruptcy laws, that authority is no longer recognized as valid to abrogate the State's Eleventh Amendment immunity. *See Seminole*, 517 U.S. at 72–73, 116 S.Ct. 1114. Although the Supreme Court decided *Seminole* based on Congress' use of its authority under the Commerce Clause of Article I, the majority of post-*Seminole* bankruptcy cases have applied the *Seminole* holding to Congress' exercise of authority under the "indistinguishable" Bankruptcy Clause power. *In re Elias*, 218 B.R. 80, 84 (9th Cir. BAP 1998). *See also In re Creative Goldsmiths of Washington, D.C., Inc.*, 119 F.3d 1140, 1145–46 (4th Cir.1997), *cert. denied sub nom. Schlossberg v. Maryland Comptroller of Treasury*, —— U.S. ——, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998). Thus, § 106(a) is ineffective to abrogate the State's Eleventh Amendment sovereign immunity. *Elias*, 218 B.R. at 84.

*Seminole* made it clear that Congress' power to abrogate the States' sovereign immunity is now limited to congressional acts pursuant to § 5 of the Fourteenth Amendment. *Seminole*, 517 U.S. at 60–73, 116

---

**4.** Another exception to sovereign immunity is recognized when prospective injunctive relief is sought against a state official. *Seminole*, 517 U.S. at 73–75, 116 S.Ct. 1114 (citing *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). Neither this exception nor the bankruptcy court's denial of injunctive relief are issues in this appeal. Moreover, Debtors' complaint named the state agencies and not a state official. Amendment of the complaint is favored if the relief sought is not available in state court. *See Neary*, 220 B.R. at 870 (bankruptcy court dismissing without prejudice so debtors could amend their complaint to determine dischargeability of tax liability to name an appropriate

state official). The record does not show that Debtors sought to amend their complaint in this manner.

**5.** The Bankruptcy Clause empowers Congress to "establish ... uniform Laws on the subject of Bankruptcies throughout the United States." U.S. CONST. ART. I, § 8, cl.4.

**6.** Section 106(b) provides for a deemed waiver of the governmental unit's sovereign immunity if it files a proof of claim. Since the State did not file a proof of claim in Debtors' bankruptcy case, § 106(b) is not applicable.

S.Ct. 1114.[7] Section 5 of the Fourteenth Amendment provides, in pertinent part, that "congress shall have power to enforce, by appropriate legislation, the provisions of this article." Section 1 of the Fourteenth Amendment provides, in pertinent part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. AMEND. XIV, § 1.

The Panel recently examined the issue whether § 106(a) was enacted pursuant to § 5 of the Fourteenth Amendment, and held that it was "clearly enacted pursuant to Congress's Article I powers." *Elias*, 218 B.R. at 86. Because § 106(a) is ineffective to abrogate the State's Eleventh Amendment immunity, Debtors have raised the following arguments as to why sovereign immunity was either inapplicable or was waived by the State.

### 1. Whether the Adversary Proceeding to Determine Dischargeability was a "Suit" under the Eleventh Amendment

■ Debtors contend that count one of the complaint merely sought a determination that the alleged tax debt was discharged by the bankruptcy court's discharge order. They contend it was not a suit in law or equity which would impinge on the State's Eleventh Amendment rights and that the court had jurisdiction to construe its own order.

7. *Seminole*'s effect has been described as follows:

> Prior to *Seminole Tribe*, the Supreme Court had recognized two sources of authority through which Congress could validly abrogate state sovereign immunity: section 5 of the Fourteenth Amendment, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), and the Interstate Commerce Clause. *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989). In *Seminole Tribe*, however, the Court overruled *Union Gas* and held that "[t]he Eleventh Amendment restricts the judicial power under Article III, and

In *Elias*, the bankruptcy court granted the FTB's motion to dismiss a complaint to determine the dischargeability of certain tax debts on the basis of the State's sovereign immunity defense, and the Panel affirmed. The issues in *Elias* did not include whether the complaint was a "suit" as defined in the Eleventh Amendment; therefore, we address this issue.

The relief which Debtors sought in count one included a declaratory judgment that the tax debt had been discharged. However, such relief would require the bankruptcy court to determine that the tax was a dischargeable debt, because only such dischargeable debts are affected by the discharge order. *See* §§ 727(b), 523(a)(1), 507(8), and Fed.R.Bankr.P. 4007(a) and (b) (complaint to determine dischargeability of debt pursuant to § 523(a)(1) can be filed at any time). The State alleged in its answer to the complaint that the tax debt was nondischargeable. Therefore, the bankruptcy court would also have to resolve the disputed issue of Debtors' liability for and amount of the tax debt, because otherwise the tax would not be a "debt." *See* § 523(a) (listing exceptions to discharge for "any debt—"). Debtors' liability hinged on resolution of counts two and three because Debtors alleged fraud and constitutional violations on the part of the State which resulted in the imposition of the tax.

Thus, to adjudicate count one, the bankruptcy court would not merely be construing its prior discharge order, as Debtors argued. The bankruptcy court would be required to exercise fully its core jurisdiction, *see* 28 U.S.C. § 157(I) (core proceedings include determinations as to dischargeability of particular debts), and its authority to decide Debtors' tax liability pursuant to § 505.

> Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." 517 U.S. at 72–73, 116 S.Ct. at 1131–32. "Thus, since *Seminole Tribe* section five of the Fourteenth Amendment has been the sole basis for Congress to abrogate the states' immunity under the Eleventh Amendment." *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Bd.*, 131 F.3d 353, 358 (3d Cir.1997).

*In re Sacred Heart Hosp. of Norristown*, 133 F.3d 237, 242 (3rd Cir.1998) (as amended) (footnote omitted).

Debtors' argument that count one was not a "suit" would render superfluous § 106(a), listing the pertinent code sections to which the State's right to immunity extends but is abrogated. Determinations of dischargeability and tax liability, as well as the scope of the discharge injunction are matters listed within the ambit of Eleventh Amendment immunity under § 106(a). Notwithstanding the unconstitutionality of § 106(a) to abrogate sovereign immunity, its provisions support a determination that Congress understood that such proceedings are "suits" subject to the Eleventh Amendment.

The Eleventh Amendment's limitation on federal court jurisdiction extends even to an adjudication involving core jurisdiction:

Even when Congress is vested with complete law-making authority over a particular area by the Constitution, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting states.

*Sofamor Danek Group*, 124 F.3d at 1183 (citing *Seminole*, 517 U.S. at 72, 116 S.Ct. 1114).

Debtors contend that the bankruptcy court can exercise its broad equitable jurisdiction over the bankruptcy estate to adjudicate the complaint. *See* 28 U.S.C. § 1334 (granting district courts jurisdiction over all Title 11 cases). The Supreme Court has rejected an exception to sovereign immunity for an action seeking a monetary recovery by a bankruptcy trustee on the basis of the bankruptcy court's broad jurisdictional grant found in 28 U.S.C. § 1334 or its unique *in rem* jurisdiction. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 38, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). The Supreme Court stated that a sovereign's exposure to suit should be governed by the specific language of § 106 and not the broad jurisdictional grant of § 1334(e)[8]. *Id.* at 38, 112 S.Ct. 1011. *Compare Gardner v. State of New Jersey*, 329 U.S. 565, 573–74, 67 S.Ct. 467, 91 L.Ed. 504 (1947) (holding that the reorganization court had jurisdiction over the tax claims where the State waived immunity by filing a proof of claim against the estate). *See also In re ABEPP Acquisition Corp.*, 215 B.R. 513, 516–17 (6th Cir. BAP 1997).

On the other hand, the *in rem* jurisdiction theory has been applied successfully to reject States' arguments that they are not subject to: (1) a discharge order, which is subsequently asserted as an affirmative defense, *State of Texas v. Walker*, 142 F.3d 813, 820–22 (5th Cir.1998); (2) adjudication of dischargeability where the State filed the adversary proceeding, *In re Platter*, 140 F.3d 676, 679–80 (7th Cir.1998); or (3) an order confirming a chapter 11 plan to which the State did not object, *State of Maryland v. Antonelli Creditors' Liquidating Trust*, 123 F.3d 777, 786–87 (4th Cir.1997).

Construing a discharge order in the case at bar is distinguishable from interpreting the plan confirmation order in *Antonelli*. In *Antonelli*, the State was a creditor for unpaid income and property taxes. A reorganization plan was confirmed which exempted transfers of property made pursuant to the plan from transfer and recordation taxes. Later, the State brought suit in state court to recover taxes exceeding $95,000 due to transfers made pursuant to the plan. The action was removed to district court. The State contended that it was not a creditor with respect to the transfer and recordation taxes at the time of plan confirmation because the taxes had not yet been incurred. The district court agreed with the defendants that the State had the opportunity to challenge the plan provisions prior to confirmation and could not do so in a subsequent court proceeding. On appeal to the Fourth Circuit Court of Appeals, the State for the first time contended that it was not subject to the plan confirmation order due to its Eleventh Amendment sovereign immunity. The Fourth Circuit Court of Appeals affirmed the applicability of the plan provisions to the State, holding that the confirmation order was not entered in a "suit" or adversary

---

**8.** 28 U.S.C. § 1334(e), formerly § 1334(d), provides:

The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.

proceeding, and the bankruptcy court's authority to enter the confirmation order derived from its broad jurisdiction over debtors and their estates. *Id.* at 786.[9]

Here, Debtors initiated an adversary proceeding. The bankruptcy court was asked to determine the dischargeability of the taxes. Such new relief encompassed issues beyond the scope of the discharge order, which did not apply to a debt determined to be nondischargeable. In addition, this is a chapter 7 case which does not involve the binding effect of plan provisions. Compare *Antonelli*, where the issue of tax exemption had been decided by the plan confirmation order. *See also Walker*, 142 F.3d at 823 (holding that discharge and determination of dischargeability raised as an affirmative defense against the State's claims did not offend the Eleventh Amendment, but the commencement of an adversary proceeding directly against a State would do so); *ABEPP*, 215 B.R. at 516–17 (rejecting chapter 7 trustee's position that bankruptcy court could assert *in rem* jurisdiction over State to recover payment of sales tax); *Creative Goldsmiths*, 119 F.3d at 1149 (even where the State filed a proof of claim for one type of past due tax, it did not waive Eleventh Amendment immunity against an adversary proceeding to determine a different type of tax).

■ The Supreme Court has held that the jurisdictional bar of the Eleventh Amendment applies "regardless of the relief sought." *Pennhurst*, 465 U.S. at 100–01, 104 S.Ct. 900. *See also Seminole*, 517 U.S. at 58, 116 S.Ct. 1114 ("the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh

Amendment"). The Eleventh Amendment "serves to avoid 'the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.' " *Id.* (quoting *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993)). Furthermore, the Supreme Court has emphasized "the importance of a State's legal liability" and has held that the Eleventh Amendment "protects the State from the risk of adverse judgments," even though the judgment will have no impact upon the state treasury. *Regents of the University of California v. Doe*, 519 U.S. 425, ——, 117 S.Ct. 900, 904–05, 137 L.Ed.2d 55, 61–62 (1997).

■ Several courts which have examined the applicability of the Eleventh Amendment to declaratory judgment actions have concluded that the Eleventh Amendment extends to suits for declaratory relief as well as for money damages. *See In re Morrell*, 218 B.R. 87, 89–90 (Bankr.C.D.Cal.1997) (chapter 7 debtor's complaint to determine dischargeability of tax debt was barred by Eleventh Amendment); *In re Kish*, 212 B.R. 808, 812 (D.N.J.1997) (chapter 7 debtor's complaint to determine that state surcharges were discharged was barred by the Eleventh Amendment); *In re Rose*, 214 B.R. 372, 376 (Bankr. W.D.Mo.1997) (granting state agency's motion to dismiss debtor's complaint to determine dischargeability of student loan debt). *But see In re Ranstrom*, 215 B.R. 454, 455–56 (Bankr.N.D.Cal.1997) (holding that the bankruptcy court had jurisdiction to determine whether the debtors' tax debts were discharged in their chapter 7 bankruptcy case).[10]

---

9. A few months before *Antonelli* was decided, a bankruptcy court in the Fourth Circuit decided another state tax case, but held that it lacked jurisdiction over the taxing authorities to enter a declaratory judgment pursuant to the provisions of the confirmed plan. *See In re NVR, L.P.*, 206 B.R. 831, 834 (Bankr.E.D.Va.1997). Unlike *Antonelli*, where the State sought to collect taxes, in *NVR*, the debtors sought a determination that the State was required to *refund* certain property transfer and recordation taxes already paid. The bankruptcy court noted that the debtors had not initiated an action under *Ex parte Young* to enjoin officials of the taxing authorities from holding the funds. Inasmuch as granting the debtors' motion would have the " 'same effect as a

full-fledged award of damages,' " the bankruptcy court concluded that the declaratory action was precluded as a "suit" under the Eleventh Amendment. *Id.* at 844 (quoting *Mansour*, 474 U.S. at 73, 106 S.Ct. 423).

10. In *Ranstrom*, the debtors' amended complaint added a claim for damages for violation of the automatic stay. The bankruptcy court held that the State was immune from the money judgment in bankruptcy court, but not from a determination that the State's claims had been discharged. The reasons given by the court for so holding were as follows: (1) the "benign nature" of the dischargeability proceeding which was not a suit for monetary recovery; (2) the

Declaratory relief could result in an order having *res judicata* effect in a later proceeding to recover damages. *See NVR*, 206 B.R. at 844 (citing *Mansour*, 474 U.S. at 73, 106 S.Ct. 423). Debtors' complaint sought damages, and adjudication of count one would finally determine Debtors' tax liability. *See In re Mueller*, 211 B.R. 737, 742 (Bankr. D.Mont.1997) (determination of personal liability on a corporate tax debt is a "suit"). *But see In re Psychiatric Hospitals of Florida, Inc.*, 216 B.R. 660 (M.D.Fla.1998).[11] The effect of ruling unfavorably for the State on count one could be to take the first step toward an assertion of money damages against the State. Considering case law and the facts of this case, therefore, we hold that Debtors' complaint for a determination of dischargeability constituted a suit for purposes of the Eleventh Amendment.

### 2. Whether the State Waived its Eleventh Amendment Immunity to Count One by its Answer.

 The Supreme Court has consistently held that a State will be deemed to have waived its sovereign immunity "only where [the waiver is] stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Edelman*, 415 U.S. at 673, 94 S.Ct. 1347; *see also Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 239–40, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985).

Debtors' arguments, effectively, are that the State waived its sovereign immunity defense to count one. First, Debtors contend that the State admitted the irrelevance of the Eleventh Amendment to count one because it expressly did not assert that defense to count one in its answer.

 The Eleventh Amendment immunity defense may be raised at any time, even for the first time on appeal. *Platter*, 140 F.3d at 679 (citing *Edelman*, 415 U.S. at 677–78), 94 S.Ct. 1347; *In re Fennelly*, 212 B.R. 61, 62–63 & n. 1 (D.N.J.1997) (citing *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 683 n. 18, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982)). The State asserted Eleventh Amendment immunity to counts two and

legislative intention to give bankruptcy courts the power to determine dischargeability issues; (3) policy considerations to allow the bankruptcy court to determine whether a tax has been discharged considering the money bankruptcy estates provide to State treasuries; and (4) if the Supreme Court interprets the Eleventh Amendment so strictly that it interferes with Congress' power to make effective bankruptcy laws, the Eleventh Amendment should also be restricted to its express terms that it applies only to suits brought against a State by citizens of another State. *Ranstrom*, 215 B.R. at 455; *see also Seminole*, 517 U.S. at 110, 116 S.Ct. 1114 (J. Souter, dissenting).

While the *Ranstrom* opinion is appealing, it is a minority view in the wake of *Seminole*. The judicial attitude of *Ranstrom* appears to emanate from the pre-amended code, which the Supreme Court interpreted as permitting a bankruptcy court to determine the amount and dischargeability of an estate's liability to the government, whether or not the government filed a proof of claim waiving its sovereign immunity. *See Nordic Village*, 503 U.S. at 35–36, 112 S.Ct. 1011 (citing *Hoffman v. Connecticut Dep't of Income Maintenance*, 492 U.S. 96, 101–02, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989)). Those cases were construing § 106, which has since been determined to be unconstitutional to the extent that it abrogates an unconsenting State's Eleventh Amendment immunity. *See Quillin v. Oregon*, 127 F.3d 1136, 1138 (9th Cir.1997) ("Article I

cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction"); *Elias*, 218 B.R. at 86. Presently, there is no means to determine a dischargeability complaint against the State other than through § 106.

11. This case held that a motion to determine tax liability under § 505, which named the Property Appraiser and did not seek a money judgment or injunctive relief against the State, was not a "suit" in violation of the Eleventh Amendment's "design to avoid the indignity of subjecting a state to the coercive process of federal judicial power ...." *Psychiatric Hospitals*, 216 B.R. at 661. The bankruptcy court expressed a minority view that Congress' power under the Bankruptcy Clause is distinguishable from its power under the Commerce Clause because a bankruptcy court must "deal with the adjustment of the relationship between debtors, creditors and security holders." *In re Psychiatric Hospitals of Florida Inc.*, 217 B.R. 645, 649 (Bankr.M.D.Fla. 1997), *aff'd*, 216 B.R. 660 (M.D.Fla.1998). The district court affirmed on the narrow grounds that the motion sought no remedy or action from the State but merely "to have the Bankruptcy Court determine its tax liabilities regarding certain properties which the Property Appraiser had previously assessed"; moreover, the Appraiser stipulated to the property values assigned by the bankruptcy court. *Psychiatric Hospitals*, 216 B.R. at 661.

three, which were inextricably intertwined with count one. In its motion for judgment on the pleadings, the State asserted its Eleventh Amendment immunity as to the entire adversary proceeding. In its appellate brief, the State further contends that all relief sought by Debtors is barred by the Eleventh Amendment. The State's assertion of the defense to count one later in the proceedings or on appeal was not improper and did not constitute a waiver of that defense.

Secondly, Debtors contend that the State admitted in paragraph 3 of its answer that the taxes were discharged, thus, it cannot now bar a judgment to that effect. This contention is not entirely accurate, because the State also answered in paragraphs 2 and 14 that the tax debt was nondischargeable.

Moreover, Debtors' argument is irrelevant to the issue of the bankruptcy court's subject matter jurisdiction. For purposes of a Fed. R.Civ.P. 12(c) motion, only factual allegations of the complaint are taken as true, *Hal Roach Studios*, 896 F.2d at 1550, and judgment is appropriate if a party is entitled to judgment as a matter of law. *See Westlands Water District*, 10 F.3d at 670. The bankruptcy court correctly decided not to reach the merits because it lacked subject matter jurisdiction to enter a judgment regarding dischargeability.

### 3. Whether the Bankruptcy Court Applied Seminole Retroactively

Debtors also contend that even if, after *Seminole*, the Eleventh Amendment would bar the relief which they sought, *Seminole*, which was decided in March 1996, should not be applied retroactively to the February 1996, discharge order. *Seminole* is silent on the issue of retroactivity.[12] *Compare Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 88, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (Supreme Court explicitly held that retroactive application would be inequitable because it would "visit substantial injustice and hardship upon those litigants

who relied upon the [1978 Bankruptcy] Act's vesting of jurisdiction in the bankruptcy courts"). Debtors contend that *Northern Pipeline's* analysis would make retroactive application of *Seminole* inequitable. We need not reach this issue.

*Seminole* was decided on March 27, 1996. Debtors' amended complaint was filed approximately 10 months thereafter. The motion for judgment on the pleadings of the pending adversary was filed approximately one year after *Seminole* was decided. The parties raised and argued *Seminole* and the pertinent jurisdictional issues in their pleadings. The bankruptcy court had not yet determined the complaint on its merits.

The pertinent order in this appeal was not the order of discharge but the final judgment in the adversary proceeding entered on April 29, 1997. Therefore, the issue of retroactivity did not arise on these facts. *See Kish*, 212 B.R. at 811–12 (district court applied *Seminole* to reverse judgment of nondischargeability, where discharge order was entered pre-*Seminole*, on December 20, 1995, and nondischargeability judgment was entered in the debtor's adversary proceeding post-*Seminole*, on February 4, 1997).

### 4. Whether the Due Process and Equal Protection Claims are Barred by the Eleventh Amendment

 Debtors further contend that because counts two and three alleged substantive violations of the Fourteenth Amendment, such claims overrode Eleventh Amendment immunity under the ruling of *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). The Supreme Court in *Seminole* reaffirmed the holding in *Fitzpatrick* that Congress could abrogate State sovereign immunity pursuant to § 5 of the Fourteenth Amendment. *Seminole*, 517 U.S. at 59, 116 S.Ct. 1114 (citing *Fitzpatrick*, 427 U.S. at 452–56, 96 S.Ct. 2666). *Fitzpatrick* explained that the Fourteenth Amendment,

**12.** Without a discussion of retroactivity, the Ninth Circuit Court of Appeals applied the ruling of *Seminole* to an order on appeal which was entered before *Seminole*. In *Quillin*, 127 F.3d at 1138, the district court entered summary judgment against the State of Oregon. While the

order was on appeal, *Seminole* was decided. Upon the State's motion, the Ninth Circuit Court of Appeals remanded the case. Thereafter, the district court entered summary judgment in favor of the State, and its judgment was affirmed. *Id.* at 1139.

adopted subsequent to the Eleventh Amendment, expanded federal power over the States. *Fitzpatrick*, 427 U.S. at 453–56, 96 S.Ct. 2666.

We have already cited our own precedent which holds that the code was not enacted pursuant to § 5 of the Fourteenth Amendment. *Elias*, 218 B.R. at 86. Moreover, Debtors do not contend that the code was enacted pursuant to § 5 of the Fourteenth Amendment. They contend that an implementing federal statute enacted pursuant to § 5 of the Fourteenth Amendment is not required to confer jurisdiction on a federal court to hear substantive constitutional claims derived from § 1 of the Fourteenth Amendment against the State, specifically the Due Process and Equal Protection Clauses.

We do not agree that *Fitzpatrick* supports Debtors' argument. Counts two and three of Debtors' complaint simply present federal question jurisdiction, which the Supreme Court has held is subject to Eleventh Amendment immunity. See *Coeur d'Alene*, — U.S. at ——, 117 S.Ct. at 2033, 138 L.Ed.2d at 447 (citing *Seminole* ); *Sofamor*, 124 F.3d at 1183. The state court is available to vindicate violations of federal law by a State, *Pennhurst*, 465 U.S. at 100, 121, 104 S.Ct. 900, and state courts must enforce applicable federal law in suits brought before them. See *In re Lazar*, 200 B.R. 358, 376 (Bankr.C.D.Cal.1996). Furthermore, the Eleventh Amendment not only bars the federal claims, it also bars Debtors' pendent state law claims. *Linville v. Hawaii*, 874 F.Supp. 1095, 1104 (D.Haw.1994) (citing *Pennhurst*, 465 U.S. at 120, 104 S.Ct. 900).

Federal courts may exercise federal question jurisdiction to uphold the Fourteenth Amendment if an exception to the Eleventh Amendment exists, for example, if Debtors had named a state official as a defendant and sought prospective injunctive relief. As Justice Souter stated in his dissenting opinion in *Coeur d'Alene:*

> Congress has implemented the Constitution's grant of federal-question jurisdiction by authorizing federal courts to enforce rights arising under the Constitution and federal law. The federal courts have an obligation to exercise that jurisdiction, and in doing so have applied the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), that in the absence of some congressional limitation a federal court may entertain an individual's suit to enjoin a state officer from official action that violates federal law.

*Coeur d'Alene*, — U.S. at ——, 117 S.Ct. at 2047, 138 L.Ed.2d at 466.

Debtors contend that their position is supported by the Supreme Court's opinion in *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). Gagne sued the Commissioner of Welfare of the State of Connecticut in district court pursuant to the federal Civil Rights Act, 42 U.S.C. § 1983, alleging that the State's federally funded aid program violated the Social Security Act and the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Ultimately the case was settled by entry of a consent decree, and the constitutional claims were not adjudicated. Nonetheless, Gagne was awarded attorney's fees pursuant to 42 U.S.C. § 1988, which allows the prevailing party in an action to enforce § 1983 to be awarded attorney's fees. One issue in the case was whether the district court was barred from awarding attorney's fees against the State by the Eleventh Amendment because resolution of the case involved a purely statutory, non-civil-rights claim, *i.e.*, the Social Security Act. The Supreme Court held that the plaintiff was entitled to the fees pursuant to § 1988 because substantial constitutional claims were pendent to the claims settled favorably to Gagne, and that the Supreme Court had "never viewed the Eleventh Amendment as barring such awards." *Id.* at 131–32, 100 S.Ct. 2570. The Court, in the same passage, further held that § 1988 was enacted pursuant to § 5 of the Fourteenth Amendment:

> [E]ven if the Eleventh Amendment would otherwise present a barrier to an award of fees against a State, Congress was clearly acting within its power under § 5 of the Fourteenth Amendment in removing that barrier. Under § 5 Congress may pass any legislation that is appropriate to enforce the guarantees of the Fourteenth Amendment. A statute awarding attorney's fees to a person who prevails on a Fourteenth Amendment claim falls within the category of "appropriate" legislation.

And clearly Congress was not limited to awarding fees only when a constitutional or civil rights claim is actually decided. We agree with the courts below that Congress was acting within its enforcement power in allowing the award of fees in a case in which the plaintiff prevails on a wholly statutory, non-civil-rights claim pendent to a substantial constitutional claim or in one in which both a statutory and a substantial constitutional claim are settled favorably to the plaintiff without adjudication.

*Id.* at 132, 100 S.Ct. 2570 (footnote omitted).

*Gagne* does not support Debtors' argument. Debtors alleged that the State's conduct and the State tax code violated the Fourteenth Amendment, but they did not seek damages or attorney's fees pursuant to a federal law enacted pursuant to § 5. *See Seminole*, 517 U.S. at 59, 116 S.Ct. 1114 (section 5 allows Congress to abrogate the immunity from suit guaranteed by the Eleventh Amendment). It is only through the enforcement provisions of § 5 that Congress is authorized to implement the provisions of § 1. *See Genentech, Inc. v. Regents of University of California*, 143 F.3d 1446, 1451–52 (Fed.Cir.1998); *see also City of Boerne v. Flores*, —— U.S. ——, ——, 117 S.Ct. 2157, 2165, 138 L.Ed.2d 624, 640 (1997) (section 1 imposes "self-executing limits on the States"; section 5 prescribes Congress's remedial power to protect the provisions through enactment of national law).[13]

To the extent the Debtors sought damages and attorney's fees for violations of the Fourteenth Amendment pursuant to the bankruptcy code provisions, such relief was not available because the code was not enacted pursuant to § 5. *Elias*, 218 B.R. at 86. Therefore, the bankruptcy court did not err in concluding that the Eleventh Amendment barred its federal question jurisdiction over counts two and three.

## CONCLUSION

Debtors' amended complaint, filed after the *Seminole* opinion, sought declaratory and monetary relief against the State taxing authorities. The State asserted the defense of sovereign immunity. Section 106 is invalid to abrogate the State's Eleventh Amendment immunity, and the State did not waive its immunity. Count one was a suit subject to the Eleventh Amendment because it sought a final determination regarding dischargeability of the tax debt, necessitating a determination of Debtors' tax liability, and Debtors sought related monetary damages. Debtors' Fourteenth Amendment claims were subject to the Eleventh Amendment and no exception or valid federal statute was presented for the bankruptcy court's assertion of federal question jurisdiction.

The bankruptcy court reached the correct legal conclusion that it did not have jurisdiction to adjudicate the claims before it. The bankruptcy court's order granting judgment on the pleadings and dismissing Debtors' complaint is **AFFIRMED**.

---

13. Debtors' other authority is not on point. In *Hodge v. Muscatine County*, 196 U.S. 276, 25 S.Ct. 237, 49 L.Ed. 477 (1905), *People v. Skinner*, 18 Cal.2d 349, 115 P.2d 488 (1941), and *Dressler v. County of Alpine*, 64 Cal.App.3d 557, 134 Cal. Rptr. 554 (1976), Eleventh Amendment immunity was not an issue, and all of the cases concerned appeals from state courts.