**In re HUFFINE, Charles W. and Huffine, Kay L., Debtors.**

**Charles W. Huffine and Kay L. Huffine, husband and wife, Plaintiffs,**

**v.**

**California State University–Chico, Educational Credit Management Corporation, a Minnesota corporation, Northwest Educational Loan Association, a Minnesota corporation, Student Loan Marketing Association, a federally chartered corporation and Student Loan Servicing Center, a division thereof and Washington State University, Defendants.**

Bankruptcy No. 96–04420–K1B.
Adversary No. 97–0012–W1B.

United States Bankruptcy Court,
E.D. Washington,
at Spokane.

March 10, 2000.

Jean H. Campbell, Pullman, WA, for Charles and Kay Huffine.

John F. Salmon, III, Attorney General's Office, Pullman, WA, for Washington State University.

## MEMORANDUM DECISION RE: WASHINGTON STATE UNIVERSITY'S MOTION TO DISMISS

PATRICIA C. WILLIAMS, Chief Judge.

### *BACKGROUND*

Debtors Charles and Kay Huffine filed for Chapter 7 relief on October 9, 1996. Debtors/Plaintiffs timely filed a Complaint to Determine Dischargeability of Debt pursuant to 11 U.S.C. § 523(a)(8) on January 15, 1997 against six defendant univer-

sities and/or student loan servicing or management associations.

The complaint alleges that the husband plaintiff, whose wife is employed by WSU in a secretarial capacity, incurred the student loans at issue between 1989 and 1994 and that he is permanently disabled. He suffers from various physical problems as well as bipolar disorder. He has periodically been institutionalized for inpatient treatment of the disorder. One of the parties' children also has bipolar disorder. The plaintiff husband, who is in his 60's, allegedly has had only sporadic minimal employment since 1984.

Three defendants have either not appeared or they have assigned their interest to the remaining three defendants, Washington State University ("WSU"), Educational Credit Management ("ECMC"), and Northwest Educational Loan Association ("NELA"). These defendants proceeded with the case and a Pre–Trial Order was entered on November 17, 1997. On July 24, 1998, NELA stipulated to the entry of an order discharging debtors' debt based upon the Permanent Total Disability Certification signed by the debtors' physician. On August 4, 1998 ECMC stipulated to the entry of an order discharging debtors' debt based upon the same certificate. The only remaining defendant, WSU, after participating in extensive discovery and various pretrial matters, filed its Motion to Dismiss stating that this court has no jurisdiction over the state without its consent and it does not consent nor has it submitted itself to the jurisdiction of this court. The jurisdictional objections contained in WSU's Motion to Dismiss directly controvert its assertion in its answer that this court does have jurisdiction over its ten counterclaims which essentially request judgment of non-dischargeability.

### ISSUE

The issue is whether this court has jurisdiction to determine the dischargeability of the student loans.

■ The basis of the defendant's Motion to Dismiss is that this court lacks jurisdiction over the defendant which, as an arm of the state, is immune from suit in federal courts.[1] The legal basis for the motion is grounded in the U.S. Supreme Court's decision *Seminole Tribe v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). *Seminole* held that state sovereign immunity limits federal court jurisdiction even though certain constitutional provisions, including the Commerce Clause of Article I, vest complete lawmaking authority in the federal government.[2]

The immunity of states from suits brought in federal courts, even under the *Seminole* decision, is not absolute. That Supreme Court decision as well as later decisions expanding upon the principles contained in *Seminole* have recognized circumstances under which citizens may bring suit against states in federal courts. Sovereign immunity may be abrogated by Congress in certain situations. States may by the enactment of legislation so

---

1. The parties agree that defendant WSU is an arm of the state for sovereign immunity purposes. *Houghton v. Board of Regents*, 691 F.Supp. 800 (S.D.N.Y.1988).

2. In footnote No. 16 at page 73 of the *Seminole* decision, the majority, referring to bankruptcy and other federal laws, states: " … there is no established tradition in the lower federal courts of allowing enforcement of those federal statutes against the States." This particular lower federal court finds that statement bewildering. Bankruptcy courts routinely enforce Bankruptcy Code provisions against states. In the majority of bankruptcy proceedings, claims held by state agencies are enforced and paid, not in accordance with state law, but as required by the Code. Such claims are routinely classified and litigated in bankruptcy courts. If the provisions of the automatic stay under 11 U.S.C. § 362 and the "permanent injunction" under § 524(a)(2) could not be enforced against a state which is attempting to collect pre-petition taxes, traffic fines or assigned child support or other obligations, it would be extremely difficult if not impossible to successfully reorganize any debtor's financial affairs.

providing, waive sovereign immunity. States may even under certain circumstances, waive it by conduct or by agreement.

## ABROGATION OF SOVEREIGN IMMUNITY BY CONGRESS

■ Congress has the power to abrogate a state's sovereign immunity under the Eleventh Amendment when exercising its powers under the Fourteenth Amendment, but Congress was not acting under the Fourteenth Amendment in enacting the Bankruptcy Code. Rather, it was acting under Clause 4 (the Bankruptcy Clause), Section 8 of Article I. For many years it was an accepted principle of jurisprudence that when acting under Clause 3 (the Commerce Clause), Section 8 of Article I, Congress could abrogate sovereign immunity. The Supreme Court so held in *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989).

In its *Seminole* decision, the Supreme Court expressly overruled *Union Gas* stating at page 72:

In overruling Union Gas today, we reconfirm that the background principle of state sovereign immunity embodied in the 11th Amendment is not so ephemeral as to dissipate when the subject of the suit is an area, like the regulation of Indian commerce, that is under the exclusive control of the Federal government. Even when the Constitution vests in Congress complete law-making authority over a particular area, the 11th Amendment prevents congressional authorization of suits by private parties against unconsenting States. The 11th Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional

limitations placed upon federal jurisdiction.

■ Section 106 of the Bankruptcy Code is the section in which Congress attempted to abrogate sovereign immunity. Even prior to *Seminole*, the Supreme Court held that a prior version of § 106 was ineffective to deprive the states of their sovereign immunity when monetary judgments against states were at issue. *Hoffman v. Connecticut Dep't of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989). The basis for that decision was not that Congress did not have the power to abrogate sovereign immunity under the Bankruptcy Clause, but that Congress' intent to do so was not "unmistakenly clear." Congress then amended § 106 to expressly state its intention to abrogate sovereign immunity. After *Seminole*, the Ninth Circuit Bankruptcy Appellate Panel considered the interplay between a state's sovereign immunity and the current §106 in *Mitchell v. California Franchise Tax Bd. (In re Mitchell)*, 222 B.R. 877 (9th Cir. BAP(Cal.) 1998) and *Elias v. United States (In re Elias)*, 218 B.R. 80 (9th Cir. BAP 1998). *Elias* concludes that congressional intent to abrogate sovereign immunity in the current version of § 106 is manifestly clear as required by *Hoffman, supra*. In considering whether Congress had the power to so act, the Bankruptcy Appellate Panel concluded that the Bankruptcy Clause of Article I did not give Congress power to abrogate sovereign immunity. Consequently, the bankruptcy courts both in *Mitchell* and in *Elias* lacked jurisdiction to determine the amount or dischargeability of the state taxes in dispute or to enjoin their collection. Although there may be some doubt whether the Supreme Court will ultimately agree with the Bankruptcy Appellate Panel's conclusion,[3] this court considers itself

---

**3.** The Supreme Court has not yet been presented with the question of whether the Bankruptcy Clause of Article I provides authority for Congress to abrogate state sovereign immunity when adopting bankruptcy laws. *Seminole* does hold that Clause 3 (the Commerce Clause) of Section 8 of Article I does

not provide such authority but many commentators have seen a distinction between the Commerce Clause and the Bankruptcy Clause. In *Hoffman*, two of the justices joining in the majority concluded Congress had no power to abrogate sovereign immunity under the Bankruptcy Clause, but the other jus-

bound by decisions rendered by the Bankruptcy Appellate Panel. Section 106 of the Code does not grant jurisdiction over an arm of the State of Washington named as a defendant in an adversary proceeding in bankruptcy.

### WAIVER BY CONDUCT IN PARTICULAR LITIGATION.

■ *Seminole* recognized that states may waive the right to sovereign immunity by consenting to the jurisdiction of federal courts. The Supreme Court in the *Seminole* decision expressly left intact the "unremarkable and completely unrelated (to abrogation) proposition that the states may waive their sovereign immunity." *Seminole, supra,* at page 65, 116 S.Ct. 1114.

■ A state's waiver of sovereign immunity must be clear and unequivocal. It cannot consent to suits in federal court by enacting legislation authorizing suit against itself in its own courts or in "any court of competent jurisdiction." Waiver can occur by legislative enactment but typically the issue of waiver arises from conduct of the state. Recently, the Supreme Court has expressly stated that a state's waiver may not be implied nor constructive but must be an "intentional relinquishment or abandonment" of the right. *College*

tices forming the majority did not so conclude. The majority opinion in fact uses the discharge of debts as an example of the power of federal bankruptcy court's rights to affect state's rights.

In the *Seminole* decision, both the majority and minority opinions rely upon comments of the founding fathers who drafted the federal Constitution. Emphasis is placed upon Alexander Hamilton's comments in the Federalist papers. In *The Federalist # 32*, Hamilton stated that the delegation of state immunity to the federal government exists in three instances, one of which would be where the Constitution grants exclusive legislative authority to the federal government and a grant of authority to the states to act in the area would be " . . . absolutely and totally contradictory and repugnant." As an example, Hamilton then refers to laws on naturalization.

*Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999). Since 1906, the Supreme Court has held that if a state voluntarily invokes federal court jurisdiction, it has waived its sovereign immunity for purposes of that suit. *Gunter v. Atlantic C.L.R. Co.,* 200 U.S. 273, 26 S.Ct. 252, 50 L.Ed. 477 (1906). *DeKalb County Div. of Family & Children Servs. v. Platter (In re Platter),* 140 F.3d 676 (7th Cir. Ind.1998) held that a state's commencement of an adversary proceeding in bankruptcy waived Eleventh Amendment sovereign immunity. The filing of a Proof of Claim is a waiver of sovereign immunity. *Rose v. United States Dep't of Educ. (In re Rose),* 187 F.3d 926 (8th Cir.1999) and *Georgia Dept. of Revenue v. Burke (In Re Burke),* 146 F.3d 1313 (11th Cir.(Ga.)1998), cert. denied, —— U.S. ——, 119 S.Ct. 2410, 144 L.Ed.2d 808 (1999). In this instance, WSU did not commence the adversary or file a proof of claim in the underlying bankruptcy proceeding. The defense of sovereign immunity may be raised at any time during the litigation. *Mitchell, supra.* Consequently, by its conduct in this particular proceeding, WSU has not waived its sovereign immunity.

### WAIVER BY AGREEMENT

■ When Congress acts in the exercise of its spending power, it may condition

Clause 4 of Section 8 of Article I of the Constitution reads: " . . . to establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankrupticies throughout the United States." This clause only refers to naturalization and bankruptcy. One of those subjects, i.e. naturalization, was, in the opinion of the federalists, a situation in which a state's exercise of sovereign immunity would be "repugnant" to the concept of federalism. Despite the Supreme Court's rulings as to other clauses of Section 8, Article I, it is certainly possible that when directly confronted with the question, the U.S. Supreme Court may conclude that Congress may abrogate state sovereign immunity when exercising powers under the Bankruptcy Clause of Article I.

a state's receipt of federal funds upon certain actions including a state's waiver of sovereign immunity. *Clark v. California Dep't of Corrections,* 123 F.3d 1267 (9th Cir.(Cal.)1997).

Although *College Savings Bank* held that participating in an activity which was highly regulated by the federal government was not a constructive waiver of sovereign immunity, *College Savings Bank* recognized that Congress, in the exercise of its spending power, may condition receipt of federal funds upon a waiver of sovereign immunity. In order to effectuate a waiver of sovereign immunity, the congressionally imposed condition that the state do so must be clearly expressed. A non-specific requirement in a federal regulation to comply with federal laws is not sufficient. *Florida Dep't of Health & Rehabilitative Services v. Florida Nursing Home Asso.,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981). The waiver which occurs upon acceptance of the federal funds must be knowing and voluntary. *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). In *Atascadero,* the Supreme Court looked only at the language of the statute itself.

This specific dispute involves the dischargeability of a student loan obligation arising under Title IV of the Higher Education Act of 1965, 20 U.S.C. § 1001, *et seq.,* as amended. Under that statute, federal funds are made available to educational institutions, including universities like the defendant, which in turn loan the federal funds to students to pay for educational expenses. A contract entitled "Student Loan Participation Agreement" is executed by the educational institution and the Department of Education which is the federal agency which administers the student loan programs under Title IV. Pursuant to that Student Loan Participation Agreement, the educational institution offers certain loans to students enrolled in the institution. In making these federal funds available to universities such as the defendant,

Congress could have statutorily expressly conditioned the receipt and utilization of those funds upon a waiver of sovereign immunity. The parties have cited to no provision of 20 U.S.C. § 1070(a), 1087, *et seq.* or other applicable statute, and the court has found no statutory provision which expressly imposes such a condition.

A cursory reading of *Atascadero* and *Seminole* would seem to imply that, even when acting pursuant to its spending power, Congress must clearly express in the statutory language the condition that sovereign immunity be waived. However, later circuit decisions, after analyzing both *Seminole* and *Atascadero,* have examined not just the language of the specific statute but the federally funded program established by the statute. Even though no statutory language expressly required a waiver of sovereign immunity as a condition of accepting the funds, courts have examined the entirety of the state's participation in the federal program.

In a situation analogous to the federal student loan participation program at issue here, *Premo v. Martin,* 119 F.3d 764 (9th Cir.(Cal.)1997), *cert. denied* 522 U.S. 1147, 118 S.Ct. 1163, 140 L.Ed.2d 174 (1998), involved not only a grant of federal funds under congressional spending power but also a contract between the federal agency disbursing the funds and the state agency receiving the funds. The Randolph–Sheppard Vending Stand Act establishes a cooperative voluntary federal state program that provides employment opportunities for blind persons and funds for equipment related to those opportunities. State agencies implement and administer the program at the state level pursuant to contract between the particular state and federal agency. As part of the conditions to administer the funds, the state agency agrees to provide an arbitration process to resolve disputes between it and a citizen participating in the program.

In *Premo,* the Ninth Circuit analyzed both the terms of the federal statute and the contract between the state and federal

agency. It placed a great deal of emphasis upon the statutory language which required the state to agree to submit disputes to arbitration. Although the statute was silent as to proceedings to enforce those awards, the circuit concluded that the "overwhelming implication" was that by participating in the program, the state waived its right to the defense of sovereign immunity to federal judicial enforcement of awards. The waiver was a condition of the state's participation in the program and the condition was clear although not expressly set forth in the statutory language.

 In deciding *Premo,* the Ninth Circuit did not require express statutory language conditioning participation in the federal program upon a waiver of sovereign immunity. In the instant proceeding, this court, in reliance on *Premo,* has not made a decision solely on the basis of whether the express statutory language at issue here contains a waiver. Rather, this court has reviewed the statute, the contract and the governing regulations to determine whether, as a whole, they contain a clear and unambiguous condition that WSU has waived sovereign immunity.

The Student Loan Participation Program Agreement which the parties agree is applicable in this case provides in Article V: "The institution agrees to perform the functions and activities set forth in 34 C.F.R. Part. 674." In essence, 34 C.F.R. § 674.49 mandates the educational institution to file a Proof of Claim in the bankruptcy proceeding of any borrower unless it is a "no asset" Chapter 7 proceeding in which no Proof of Claims are to be filed. The filing of such a Proof of Claim would of course constitute a waiver of sovereign immunity under *Rose, supra.*

The C.F.R. then provides that if the debtor commences an adversary proceeding alleging that the obligation should be discharged for undue hardship, the education institution "must determine" whether an undue hardship exists. If the educational institution concludes no undue hardship exists, it must then perform a cost/benefit analysis and, only if the cost of opposing discharge does not exceed one-third of the total amount owed, "the institution shall oppose the borrower's request for a determination of a dischargeability ..." 34 C.F.R. § 674.49(c)(5)(i).

In the instant action, the plaintiff alleges that WSU has not conducted its own review to determine whether undue hardship exists or performed a cost/benefit analysis, and plaintiff further alleges that, in fact, undue hardship exists. WSU's response is that sovereign immunity prevents this court from considering whether or not it has violated its duties under the C.F.R. and whether or not undue hardship exists. Plaintiff replies that the very language of the C.F.R. requires WSU to submit to bankruptcy court jurisdiction.

The issue of whether this Loan Participation Agreement conditions WSU's participation in this particular federal program upon a waiver of sovereign immunity in bankruptcy dischargeability actions is one of first impression in this circuit. The Tenth Circuit, however, recently decided this issue in a case which is remarkably similar to the instant action. *Innes v. Kansas State Univ. (In re Innes),* 184 F.3d 1275 (10th Cir.(Kan.)1999), *petition for cert. filed,* (Dec. 17, 1999) (No. 99–1048), involved the same language in the student loan participation program agreement, the same C.F.R., and many of the same legal issues as presented in this case. The Tenth Circuit, as did the Ninth Circuit in *Premo* held that in determining whether sovereign immunity has been waived as a condition of participating in a federally funded program, not just the express statutory language but the federal program as a whole must be examined. If the contractual language and the regulations implementing the federal program expressly or overwhelmingly imply waiver, then the state agency's participation in the program is a waiver.

... [it] is permissible to assess the conduct of the party claiming immunity within the context of the federal program, including the specific contract and the governing federal regulation, to determine whether the state entity expressed an unequivocal intent to waive. *Innes, supra,* at p. 1281. The Tenth Circuit distinguished such a situation from that where there is merely a non-specific agreement to generally comply with federal law. That circuit then concluded that the educational institution was "plainly on notice" from the contract language and requirements of the specific C.F.R. referenced in the contract that it would be obligated to participate in bankruptcy court proceedings involving student loans.

> Because the contract explicitly states that KSU agrees to perform the obligations imposed by 34 C.F.R. § 674, we agree with the district court that by including this particular regulation in the contract KSU necessarily consented to perform certain functions in the federal bankruptcy court pursuant to § 674.49. The inclusion of this federal regulation in the contract so clearly binds KSU to suit in federal bankruptcy court that if the contract were enacted into legislation it would undoubtedly satisfy *Edelman's* waiver test. To conclude that KSU intended anything other than a waiver would defy logic, contract law, and the equitable principles of bankruptcy. Indeed, we do not think it is either reasonable or possible to read the agreement and corresponding regulation, along with the authorizing Kansas legislation, to conclude that KSU intended anything other than a waiver.

*Innes, supra,* at p. 1282.

The Tenth Circuit decision appears to be consistent with decisions in this circuit discussing the interplay between sovereign immunity and bankruptcy court jurisdiction. It follows the same approach as did the Ninth Circuit in *Premo,* i.e. no express statutory language is required if the waiver is clear from the program requirements as a whole. As no Ninth Circuit authority addresses the precise issues raised in the instant case, this court will adopt the holding contained in *Innes. Innes* held that an educational institution's participation in the federal student loan program governed by this contract and this C.F.R. requires waiver of that educational institution's sovereign immunity in bankruptcy proceedings involving that student loan.

In conclusion, WSU has voluntarily waived sovereign immunity by its conduct, i.e. participating in the federal student loan program. This court has jurisdiction to determine whether the loan at issue is dischargeable. WSU's Motion to Dismiss is denied and an order will be entered accordingly.