In re Kimberly Jane ARNOLD, Debtor.

Kimberly Jane Arnold, Plaintiff,

v.

Sallie Mae Servicing Corporation and Tennessee Student Assistance Corporation, Defendants.

Bankruptcy No. 00–27842–K.
Adversary No. 00–0565.

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

Nov. 27, 2000.

James A. Cohen, Memphis, TN, for Plaintiff-Debtor.

Honorable Paul G. Summers, Tennessee Attorney General and Reporter, Sally Ramsey, Assistant Attorney General, Tax Division, Bankruptcy Unit, Nashville, TN, for TSAC.

Douglas M. Alrutz, Memphis, TN, for Sallie Mae.

Ellen B. Vergos, Memphis, TN, United States Trustee for Region 8.

Madalyn S. Greenwood, Memphis, TN, Assistant United States Trustee for Region 8.

Monica M. Simmons, Memphis, TN, Assistant United States Attorney.

Edward L. Montedonico, Memphis, TN, Chapter 7 Trustee.

## MEMORANDUM DENYING DEFENDANT'S PRETRIAL MOTION TO DISMISS ADVERSARY PROCEEDING COMBINED WITH NOTICE OF THE ENTRY THEREOF

DAVID S. KENNEDY, Chief Judge.

In this chapter 7 case the defendant, Tennessee Student Assistance Corporation ("TSAC"), has filed a pretrial motion seeking a dismissal of the above-referenced

dischargeability complaint previously filed under section 523(a)(8) of the Bankruptcy Code ("Code") by the plaintiff, Kimberly Jane Arnold, the above-named chapter 7 debtor ("Debtor"). For the reasons mentioned hereinafter, the court denies TSAC's instant motion. Simply put, TSAC argues that it is immune from this action under the Code by virtue of the 11th Amendment of the United States Constitution.[1]

The sole question for judicial determination here is whether section 106(a) of the Code, as it relates to section 523(a)(8) of the Code, is a constitutionally permissible and valid abrogation of the TSAC's sovereign immunity under the 11th Amendment of the United States Constitution. For the reasons discussed below, the court finds and concludes in this core proceeding under 28 U.S.C. § 157(b)(2)(I), (A), and (O) that section 106(a) of the Code,[2] when read in conjunction with section 523(a)(8), is a constitutionally permissible and valid abrogation of TSAC's sovereign immunity under the 11th Amendment.

Although the parties have a strong difference of opinion regarding the outcome of this pretrial motion, the relevant background facts are not in dispute and may be concisely summarized as follows. Prior to bankruptcy, the debtor incurred student loan debts. Defendant, Sallie Mae Servicing Corporation ("Sallie Mae"), was the holder of the unpaid student loan claims against the debtor. TSAC is the guarantor of the debtor's debts in question here.[3] After filing an original, no-asset petition under chapter 7 of the Code, the debtor filed this dischargeability complaint pursu-

1. The 11th Amendment states:
   The Judicial power of the United States shall be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

2. Section 106 of the Code provides, in its entirety, as follows:
   (a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
   (1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, *523*, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title. (emphasis added.)
   (2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.
   (3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.
   (4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by a district court of the United States.
   (5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.
   (b) A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.
   (c) Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

3. After the debtor commenced this action seeking a judicial determination that the subject student loan debts are dischargeable, Sallie Mae assigned and transferred its claims against the debtor to TSAC in accordance with FED.R.BANKR P. 3001(e).

ant to section 523(a)(8) of the Code seeking a judicial determination in the bankruptcy court that the outstanding student loan debts owed to Sallie Mae and guaranteed by TSAC are dischargeable under the "undue hardship" exception.[4]

TSAC thereafter filed this motion seeking a pretrial dismissal of the debtor's pending section 523(a)(8) action for asserted lack of jurisdiction. Debtor opposes TSAC's motion to dismiss the above-referenced proceeding. Perhaps, it is important to note that the debtor only seeks a judicial determination that the particular student loan debts owed to Sallie Mae or TSAC are subject to a bankruptcy discharge based on the "undue hardship" exception under section 523(a)(8). No money judgment is sought by the debtor against Sallie Mae, TSAC, or the State of Tennessee. Actually, this proceeding under section 523(a)(8) is akin to a declaratory judgment action. See FED.R.BANKR.P. 7001(9).

**4.** 11 U.S.C. § 523(a)(8) provides, in relevant part, as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
&ast; &ast; &ast;
(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend unless exception such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

**5.** 11 U.S.C. § 101(27) provides as follows:

"governmental unit" means United States; State; commonwealth; District; Territory; municipality; foreign state; department; agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, A district, a Territory, a municipality, or a foreign state; or other foreign or domestic government.
TSAC is a governmental corporation created by the Tennessee Legislature for the purpose of facilitating student loans in Tennessee. As such, it is an agency, unit, or instrumentality of the State of Tennessee.

■ TSAC asserts that because it is an agency or instrumentality of the government of the State of Tennessee, it is immune from this proceeding filed in the United States bankruptcy court by virtue of the 11th Amendment.[5] Consequently, TSAC seeks a pretrial dismissal of this dischargeability action for asserted lack of jurisdiction stating that the enactment of section 106(a) of the Code, subjecting state governmental units to 60 specifically enumerated sections of the Code and the federal bankruptcy court's remedial powers, violates the 11th Amendment and also has been thwarted by the United States Supreme Court's non-bankruptcy decision in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) ("*Seminole Tribe*").[6]

As a result of the 11th Amendment and *Seminole Tribe*, among other cases, TSAC, in essence, argues that a state governmental unit can no longer be sued in the

TENN.CODE ANN. §§ 49–4–201–212; 49–4–401–508.

**6.** At issue in *Seminole Tribe* was whether the United States Congress had the power to abrogate the states' sovereign immunity pursuant to congressional authority under the Indian Commerce Clause in Article I of the Constitution when it enacted the Indian Gaming Regulatory Act. *Seminole Tribe* involved a private suit against an unconsenting state in a federal court. The Supreme Court overturned an abrogation of the 11th Amendment immunity by means of an exercise of the Congress' Article I power under the Constitution's Indian Commerce Clause. The majority opinion, however, did not resolve (or even raise) the specific question whether the 11th Amendment also bars a suit under the Code against a unit of the government of a state in a federal court. The question of the 11th Amendment's possible impact on the bankruptcy laws was raised by Justice Stevens' dissenting opinion. *Id.* at 77, 116 S.Ct. 1114 See Justin V. Switzer, *Note, Did They Really Think This Over? Seminole Tribe v. Florida and the Bankruptcy Code*, 34 Hous. L.Rev. 1243, 1257–58 (1997) (asserting that the majority in *Seminole Tribe* failed to address the Congress' power to abrogate states' immunity under the bankruptcy clause). Notwithstanding the dicta, *Seminole Tribe* held only that the 11th Amendment precluded the Congress from abrogating a state's constitutional immunity from suit in a federal court by means of a statute enacted pursuant

bankruptcy court for any type of significant relief, unless the state gives its express consent to such actions.[7] TSAC has given no such consent in the present action. If TSAC is correct in its legal position, the United States bankruptcy courts, in reality, are without meaningful authority to issue any orders, judgments, or decrees affecting the interests of a state or a unit of a state, absent the express consent of the governmental unit.[8]

TSAC's motion to dismiss this complaint for lack of jurisdiction specifically provides as follows:

"1. Pursuant to the Eleventh Amendment of the Constitution of the United States, the federal courts are without jurisdiction in suits brought by individuals against a State. The only exceptions to this rule are when the state has consented to such suit or when the suit is brought to enforce Fourteenth Amendment due process rights.

2. TSAC [Tennessee Student Assistance Corporation] is a unit of the government of the State of Tennessee.

3. TSAC has not consented to this suit.

4. This suit is not brought to enforce a constitutional right which has been denied without due process by the State of Tennessee.

5. Accordingly, the Eleventh Amendment of the United States deprives the court of jurisdiction to hear this suit."

Debtor, not surprisingly, opposes TSAC's motion to dismiss this complaint for lack of jurisdiction and primarily contends that section 106(a) of the Code is constitutional. Debtor, therefore, asserts that this court has jurisdiction over both Sallie Mae and TSAC and also the subject matter of this action.

■ Student loan debts, along with a very limited number of other types of debts,[9] are specially treated under the Code. This type of debt (*i.e.*, a student loan) is not routinely discharged (or automatically excepted from discharge). Instead, the Congress established a unique approach to the dischargeability of student loan debts. Section 523(a)(8) of the Code allows for a discharge of a student loan debt upon the filing of a successful complaint by the debtor in accordance with FED.R.BANKR.P. 7001(6), only when excepting such debt from discharge would impose an "undue hardship" on the debtor and the dependents of the debtor.[10] Also, a creditor (*e.g.*, TSAC) may file a complaint under section 523(a)(8) and FED. R.BANKR.P. 7001(6) seeking a judicial determination that a particular student loan debt is nondischargeable. See FED. R.BANKR.P. 4007(a). Interestingly, the bankruptcy court and the state court have concurrent jurisdiction to address the dischargeability of student loan debts under section 523(a)(8) of the Code.[11]

The debatable issue of the constitutionality of section 106(a) of the Code is ongoing and has engendered much discussion and controversy resulting in a sharply divided split of judicial authority among the lower federal courts and legal scholars.[12] This conflict of authority has created constitutional confusion and uncertainty re-

---

to the Indian Commerce Clause in Article I, Section 8. Compare *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636; *Florida Prepaid Postsecondary Educ. Expense Bd. v. College Savings Bank*, 527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999); *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999).

7. State governmental units are among the largest creditors who appear in the bankruptcy courts. See *State Bankruptcy Survey Results*, BANKR CT. DEC., WEEKLY NEWS AND COMMENT, at p. A1 (Nov. 19, 1996).

8. See generally Richard Lieb, *Eleventh Amendment Immunity of a State in Bankruptcy Cases: A New Jurisprudential Approach*, 7 AM.BANKR.INST.L.REV. 269 (Spring 1999).

9. See, e.g., 11 U.S.C. § 523(a)(1) (certain taxes) and (5) (alimony and child support).

10. See also 42 U.S.C. § 292f(g) (regarding "HEAL" student loan debts).

11. See 28 U.S.C. § 1334(b); cf. 11 U.S.C. § 523(c)(1).

12. See, e.g., Lieb, *supra* note 8.

sulting in a lack of uniformity in the nation's bankruptcy system.

■ This court, like the court in *In re Straight*, 248 B.R. 403, 422 (10th Cir. BAP 2000), is of the opinion that a constitutional analysis of section 106(a) of the Code should be made on a statute-by-statute basis. Section 106(a) of the Code provides, in pertinent part, that "[n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following: (1) Sections ... 523...." Section 106(a)(2) provides that the court may hear and determine any issue arising under the 60 specific sections enumerated in section 106(a)(1).[13] Section 106(a)(3) and (4) provide the statutory grounds for the court to issue an enforceable money judgment against a governmental unit in any of the 60 sections cited in section 106(a)(1), excluding an award of punitive damages.[14]

■ The law is well settled that a statute of the United States Congress (*e.g.*, section 106(a)) enjoys a presumption of constitutionality. See, among others, *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). It is emphasized in this action that any analysis of the constitutionality of a statute must begin with the presumption that the statute is constitutionally valid. *U.S. v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); *U.S. ex rel. Madden v. General Dynamics Corp.*, 4 F.3d 827, 830 (9th Cir.1993). It is further emphasized that this presumption is strongest when the Congress determines that it has the power to enact the statute. See, e.g., *Rostker v. Goldberg*, 453 U.S. 57, 64, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981); see also Section 5 of the 14th Amendment[15] and Article I, Section 8, Clause 4 of the United States Constitution (discussed more fully infra).

■ It is now well established that the legislative acts adjusting the burdens and benefits of economic life come to the court with the presumption of constitutionality and that the burden is on the complainant to establish that the legislature has acted in an arbitrary and irrational way.[16] *Ferguson v. Skrupa*, 372 U.S. 726,

---

**13.** Subsection (b) of section 106 of the Code was clarified in 1994 by allowing a compulsory counterclaim to be asserted against a governmental unit only where such unit has actually filed a proof of claim in the bankruptcy case. This has the effect of overruling contrary case law, such as *Sullivan v. Town & Country Nursing Home Serv., Inc.*, 963 F.2d 1146 (9th Cir.1991); *In re Gribben*, 158 B.R. 920 (S.D.N.Y.1993); and *In re Craftsmen, Inc.*, 163 B.R. 88 (Bankr.N.D.Tex.1993).

**14.** Subsection (c) of section 106 was amended in 1994 to expressly provide for a waiver of sovereign immunity by governmental units with respect to monetary recoveries as well as declaratory and injunctive relief. It effectively overrules *Hoffman v. Connecticut Dept. of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), and *United States v. Nordic Village, Inc.*, 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992).

**15.** The 14th Amendment provides, in relevant part here, as follows:
Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they

reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
\* \* \*
Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

**16.** The general philosophy of the bankruptcy laws is "to give the [honest but unfortunate] debtor a 'new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)). A co-equal purpose of the bankruptcy laws is to promote equality of treatment among creditors similarly situated. In essence, the bankruptcy laws displace the various state debt collection processes in favor of a uniform collective process in the federal bankruptcy court. Bankruptcy laws are characterized by the inherent tension

83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 487–488, 75 S.Ct. 461, 99 L.Ed. 563 (1955); see also *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). Indeed, it is well settled that a presumption exists in favor of the constitutionality of an act of the Congress. *Regan v. Time, Inc.,* 468 U.S. 641, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984); *Rostker v. Goldberg,* 453 U.S. 57, 64, 101 S.Ct. 2646, 69 L.Ed.2d 478 (1981). Mere uncertainty as to the constitutionality of a statute does not rebut that presumption. See, e.g., *In re Lombard–Wall, Inc.,* 44 B.R. 928 (Bankr.S.D.N.Y.1984).

■ The power granted by the Bankruptcy Clause in Article I, Section 8, Clause 4, of the Constitution [17] appears to be more plenary in nature than the Indian Commerce Clause [18] (or the Interstate Commerce Clause).[19] The unambiguous language of the Bankruptcy Clause constitutionally authorizes the Congress to establish uniform laws on the subject of bankruptcies throughout the United States. The constitutional authorization for the Congress to establish uniform (and rational) bankruptcy laws is seemingly paramount. See, e.g., *McVey Trucking, Inc. v. Secretary of State of Illinois (In re McVey Trucking, Inc.),* 812 F.2d 311 (7th Cir.1987), *cert. den., sub. nom. Edgar v. McVey Trucking Co.,* 484 U.S. 895, 108 S.Ct. 227, 98 L.Ed.2d 186 (1987); see generally *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 247–302, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) (Brennan, J., dissenting), *reh'g den.*[20]

■ In the instant action involving sections 106(a) and 523(a)(8) of the Code, this trial bankruptcy court fully recognizes and is judicially sensitive to the *strong* presumption of the constitutionality of section 106(a) of the Code. Concomitantly, the court adopts the well reasoned analysis of the Honorable A. Thomas Small in *In re York–Hannover Developments, Inc.,* 181 B.R. 271 (Bankr.E.D.N.C.1995), a pre-

among divergent interests. There are many competing and countervailing interests to consider including the interests of state governmental units in given cases. It has been said that bankruptcy is a distinct system of jurisprudence—the nature of which is to sort out all of the debtor's legal relationships with others, and to apply the uniform principles and rules of the bankruptcy laws to those relationships, with the goal of either financially rehabilitating a distressed debtor or assembling and liquidating the debtor's asset for distribution to creditors. To accomplish these goals, modifications of pre-bankruptcy debtor-creditor relationships are required. Thus, a claim in bankruptcy may be satisfied in a manner far different from that which was originally contemplated by the parties. Pre-existing legal relationships are disturbed from a broad prospective, subject to many statutory safeguards. For example, a bankruptcy discharge is a privilege and not a constitutional right. *U.S. v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). Only honest debtors (who pay their case filing fees) receive bankruptcy discharges. *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695 (1934); 28 U.S.C. § 1930(a). Section 727(a) of the Code sets forth the statutory grounds to deny a debtor's general discharge. Notwithstanding an honest debtor's general discharge, as a matter of legislative policy, certain debts are not subject to a discharge by virtue of section 523(a) of the Code, which includes most student loan debts under section 523(a)(8).

17. Article I, Section 8, Clause 4 of the Constitution provides, in relevant part, that the Congress shall have power "[t]o establish ... uniform Laws on the subject of Bankruptcies throughout the United States."

18. Article I, Section 8, Clause 3 of the Constitution provides that the Congress shall have the power "[t]o regulate Commerce ... with the Indian Tribes."

19. Article I, Section 8, Clause 3 of the Constitution also provides that the Congress shall have the power "[t]o regulate Commerce ... among the several States...."

20. In the *McVey* case, the Seventh Circuit addressing a section 547(b) preference action under the Code against the State of Illinois, held that the Congress may validly abrogate sovereign immunity pursuant to any of its plenary powers, including the bankruptcy powers. *Id.* at 323. Perhaps it is important to note that the Supreme Court denied certiorari in *McVey*. Actually, the Supreme Court later cited *McVey* with approval in *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 14–15, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) (plurality opinion).

*Seminole Tribe* decision, holding that the Congress was within its constitutional authority when it amended section 106(a) of the Code in 1994 to expressly abrogate the states' 11th Amendment and common law sovereign immunity with respect to the specifically enumerated Code provisions. See also, e.g., the following post-*Seminole Tribe* cases supporting constitutionality, *In re Willis*, 230 B.R. 619 (Bankr.E.D.Okla. 1999); *In re Ranstrom*, 215 B.R. 454 (Bankr.N.D.Cal.1997); *In re Bliemeister*, 251 B.R. 383 (Bankr.D.Ariz.2000); *In re Lees*, 252 B.R. 441 (Bankr.W.D.Tenn.2000); the dissenting opinion in *In re Straight*, 248 B.R. 403, 421–430 (10th Cir. BAP 2000); contra, e.g., *In re Mitchell*, 222 B.R. 877 (9th Cir. BAP 1998); *Morrell v. Franchise Tax Bd. (In re Morrell)*, 218 B.R. 87 (Bankr.C.D.Cal.1997); *In re Taylor*, 249 B.R. 571 (Bankr.N.D.Ga.2000); *U.S. Dept. of Treasury v. Gosselin*, 252 B.R. 854 (D.Mass.).

The United States Supreme Court has articulated the following two-prong test to determine whether the Congress can validly abrogate states' 11th Amendment sovereign immunity: (1) whether the Congress unequivocally expressed its intent to abrogate the states' sovereign immunity, and (2) whether the Congress acted pursuant to a valid exercise of power. *See, e.g., Seminole Tribe*, 517 U.S. at 55–56, 116 S.Ct. 1114.[21] Judge Small held in *In re York–Hannover Developments, Inc.*, 181 B.R. 271 (Bankr.E.D.N.C.1995), that the Congress was within its constitutional authority when it passed section 106(a) of the Code.

Judge Small recognized that section 106(a) is an unmistakably clear abrogation of the states' sovereign immunity as it relates to section 106(a) of the Code. Judge Small further recognized that the Code contains a vast number of privileges and immunities which are validly enforceable through Section 5 of the 14th Amendment; and he rightfully concluded that section 106(a) was validly enacted pursuant to the 14th Amendment and is, therefore, a constitutionally permissible and valid exercise of the judicial power of the United States. Indeed, public interest and other economic and social concerns are statutorily injected into the remedial, federal bankruptcy laws by virtue of the powers granted by Article I, Section 8, Clause 4, of the Constitution.

The sovereign immunity of a state cannot always be readily reconcilable with the Congress' exercise of the Bankruptcy Clause contained in Article I, Section 8, Clause 4, of the Constitution. The national scope of the federal bankruptcy laws and underlying policies[22] preclude a state, or a unit of a state, from inappropriately intruding upon the Congress' exercise of its bankruptcy and 14th Amendment powers. See generally, *New York v. Irving Trust Co.*, 288 U.S. 329, 53 S.Ct. 389, 77 L.Ed. 815 (1933). The Supreme Court in *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96

---

**21.** See also *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985), cited with approval in *Seminole Tribe*, 517 U.S. at 55–56, 116 S.Ct. 1114.

**22.** The Supreme Court has addressed the purposes of the remedial bankruptcy laws on various occasions. For example, in *Stellwagen v. Clum*, 245 U.S. 605, 617, 38 S.Ct. 215, 62 L.Ed. 507 (1918), the Court stated:

"The federal system of bankruptcy is designed not only to distribute the property of the debtor, not by law exempted, fairly and equally among his creditors, but as a main purpose of the act, intends to aid the unfortunate debtor by giving him a fresh start in life, free from debts, except of a certain character, after the property which he owned at the time of bankruptcy has been administered for the benefit of creditors. Our decisions lay great stress upon this feature of the law—as one not only of private but of great public interest in that it secures to the unfortunate debtor, who surrenders his property for distribution, a new opportunity in life. *Neal v. Clark*, 95 U.S. 704, 709, 24 L.Ed. 586; *Traer v. Clews*, 115 U.S. 528, 541, 6 Sup.Ct. 155, 29 L.Ed. 467; *Hanover National Bank v. Moyses*, 186 U.S. 181, 192, 22 Sup.Ct. 857, 46 L.Ed. 1113; *Wetmoer v. Markoe*, 196 U.S. 68, 77, 25 Sup.Ct. 172, 49 L.Ed. 390, 2 Ann.Cas. 265; *Burlingham v. Crouse*, 228 U.S. 459, 473, 33 Sup.Ct. 564, 57 L.Ed. 920, 46 L.R.A.(N.S.) 148.''

S.Ct. 2666, 49 L.Ed.2d 614 (1976), recognized Section 5 of the 14th Amendment as being a constitutionally acceptable source or means of abrogating states' sovereign immunity.[23] TSAC's legal position in this action summarily frustrates and denies the full meaning and effectiveness of the uniform and remedial laws of the United States Congress relating to bankruptcy, especially when considering the Supremacy and Bankruptcy Clauses in connection with the 14th Amendment. See, e.g., *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

The two-prong test articulated by the Supreme Court in *Seminole Tribe* is constitutionally satisfied here as follows: (1) the Congress unequivocally expressed its clear intent in section 106(a) of the Code to abrogate the states' sovereign immunity, and (2) the Congress acted pursuant to a valid exercise of its power under the 14th Amendment (and Article I, Section 8, Clause 4, of the Constitution). See *In re Willis*, 230 B.R. 619 (Bankr.E.D.Okla.1999) (providing a scholarly analysis of this issue).

This result also is consistent with the Supremacy Clause and the Supreme Court's prior recognition that the collective nature of a uniform system on the subject of the remedial bankruptcy laws requires that some limitations be imposed upon states' sovereign immunity. Compare, e.g., *International Shoe Co. v. Pinkus*, 278 U.S. 261, 265, 49 S.Ct. 108, 73 L.Ed. 318 (1929); *also compare Innes v. Kansas State University (In re Innes)*, 184 F.3d 1275 (10th Cir.1999).[24]

■■■■■ Considering the national scope and intent of the uniform and remedial bankruptcy laws and the congressional policies that underlie them, it additionally is noted that the Supreme Court has been somewhat protective of the bankruptcy court's jurisdiction. See, e.g., *New Jersey v. Anderson*, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284 (1906); *New York v. Feiring*, 313 U.S. 283, 285, 61 S.Ct. 1028, 85 L.Ed. 1333 (1941); *Reitz v. Mealey*, 314 U.S. 33, 62 S.Ct. 24, 86 L.Ed. 21 (1941); *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). In light of all the foregoing, this court respectfully believes that the Supreme Court would hold, in the context of a given bankruptcy case under title 11 of the United States Code, that section 106(a), as it relates to section 523(a)(8), is a constitutionally valid and appropriate abrogation of the states' sovereign immunity under the 11th Amendment.[25]

**23.** See also *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) (plurality) (holding that the Congress may validly abrogate sovereign immunity pursuant to its plenary power under the Interstate Commerce Clause); ct. *United States v. Nebraska (In re Doiel)*, 228 B.R. 439, 443 (D.S.D.1998) (citing numerous opinions holding that the Congress cannot abrogate states' immunity under the 14th Amendment).

**24.** In *In re Innes*, 184 F.3d 1275, the 10th Circuit Court of Appeals held that Kansas State University waived its 11th Amendment immunity—and thereby submitted to the jurisdiction of the bankruptcy court for the purpose of an adversary proceeding to determine "undue hardship" under section 523(a)(8)—when the university entered into a federal student loan participation contract that explicitly required it to perform the functions and activities set forth in 34 C.F.R. § 674. *In re Innes*, 184 F.3d at 1281. This regulation, inter alia, requires an educational institution to honor a bankruptcy court's stay under section 362(a) and to follow certain other enumerated procedures it properly served with a student loan dischargeability complaint under the Code.

**25.** As discussed previously, the Supreme Court never has held that the 11th Amendment bars the Congress from abrogating the states' sovereign immunity under the Bankruptcy Clause. The dicta in *Seminole Tribe* is subject to revisitation in a new context (*i.e.*, a re-examination within the confines of a particular bankruptcy case under title 11 of the United States Code). Dicta is not covered by the doctrine of collateral estoppel because this doctrine requires that the conclusion sought to be given preclusive effect actually formed a necessary part of the ultimate decision reached by the court. That is, a significant corollary to the doctrine of collateral estoppel is that dicta have no preclusive effect. See, e.g., *In re Cassidy*, 892 F.2d 637,

The court also has considered a recent article that appears in THE AMERICAN BANKRUPTCY LAW JOURNAL, Vol. 74 (Winter 2000), entitled *A Bankruptcy Exception to Eleventh Amendment Immunity Limiting the Seminole Tribe Doctrine.* After a comprehensive analysis and discussion of the pertinent issues and relevant case law, the author concludes as follows:

> The Supreme Court has recognized that "the Eleventh Amendment implicates the fundamental constitutional balance between the Federal Government and the States." This balance will be lost in the operation of the Bankruptcy Code, if states have the option of excluding themselves from the system's operation. The Bankruptcy Clause's uniformity requirement, the system's distinctive collective nature and past Supreme Court precedent provide an ample basis for upholding the abrogation of state sovereign immunity in § 106(a) of the Bankruptcy Code without undermining a broad interpretation of Eleventh Amendment immunity. As is true of most areas of the law, the *Seminole Tribe* doctrine also requires its exceptions, if it is to remain a viable rule of constitutional law.[26]

The court has further considered an article that appears in the Norton Bankruptcy Law Adviser, No. 8 (August 1998), entitled *Bankruptcy After Seminole Tribe— New Currents of Legal Thought.* The author states in relevant part here, as follows:

> The issue whether federal law can require a State to provide a state court for the assertion of federal claims was left open by the Supreme Court in 1990 in *Howlett,* and the Court's "implied waiver" analysis sidestepped this issue in

1991 in *Hilton.* Although the impact of the Eleventh Amendment on bankruptcy claims was mentioned in the majority and dissenting opinions in *Seminole Tribe,* there was no discussion of the question whether a State has an immunity defense in a state court action to enforce a bankruptcy claim. Whether, and to what extent, federal law can waive a State's immunity from suit in a bankruptcy or state court to enforce a federal bankruptcy claim remains unresolved by the Supreme Court.

> It would, of course, be a serious matter if the Eleventh Amendment is construed to exempt States from the bankruptcy process in the bankruptcy courts. If that turns out to be the law, the remedy, if any, would be to try to conduct bankruptcy proceedings in state courts, where the Eleventh Amendment does not apply. The hope would be that the State would vest in its courts subject matter jurisdiction of federal bankruptcy claims. It must then be determined whether the State's independent defense of sovereign immunity bars enforcement of the Bankruptcy Code in a state court proceeding and, if so, whether the State has waived its sovereign immunity.

> It is hard to imagine how important aspects of a bankruptcy reorganization case dealing with rights and liabilities of a State could be conducted in a state court, while other aspects of the bankruptcy case are litigated or administered in the bankruptcy court. It is difficult to imagine how concurrent jurisdiction could be exercised in a state court to "cram down" a State-held secured claim pursuant to a plan of reorganization, while at the same time other parts of the confirmation hearing in the same case

640 (7th Cir.1990); *Coleman v. Miller,* 117 F.3d 527, 530 n. 7 (11th Cir.1997); *Ducey v. U.S.,* 830 F.2d 1071, 1072 (9th Cir.1987); *Russell v. C.I.R.,* 678 F.2d 782, 785 (9th Cir. 1982); *In re Professional Investment Properties of America, Inc.,* 157 B.R. 166 (Bankr. W.D.Wash.1993); *In re Access Beyond Technologies, Inc.,* 237 B.R. 32 (Bankr.D.Del. 1999). Dicta does not constitute binding pre-

cedent. See, e.g., *Colgrove v. Battin,* 413 U.S. 149, 157, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973) (declining to follow dicta stating that the 7th Amendment requires a jury of 12 persons in civil trials); see also *U.S. v. DiFrancesco,* 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980).

**26.** 74 AM.BANKR.L.J. 1, 31 (Winter 2000).

are conducted in the bankruptcy court. To complicate the matter even further, a claim against a State that is adjudicated by the highest court of the State may be reviewed only by the Supreme Court, by a writ of certiorari as authorized by 28 U.S.C. § 1257(a); the balance of the bankruptcy case would be reviewed on appeal in the ordinary way-an altogether different route including the federal district courts, bankruptcy appellate panels and federal courts of appeals. This prospect would drastically change if not defeat the process for adjudicating bankruptcy cases.

To hold that States are broadly immune from bankruptcy jurisdiction would be a dramatic departure from well-established law. Although the Supreme Court stated in *Seminole Tribe* that the lower federal courts did not traditionally enforce the bankruptcy laws against States, 517 U.S. at 72 n. 16, [116 S.Ct. 1114] in reality over the years the bankruptcy courts in cases pre-dating *Seminole Tribe* regularly exercised jurisdiction in proceedings against States. See *O'Brien*, 216 B.R. at 736 ("[T]here is a longstanding tradition in the bankruptcy courts of allowing the bankruptcy courts to enforce applicable law against the states."); *Schulman v. California State Water Resources Control Bd. (In re Lazar)*, 200 B.R. 358, 376 (Bankr.C.D.Cal. 1996). Consistent with that tradition, it had been held prior to *Seminole Tribe* that a State does not have Eleventh Amendment immunity to prevent a debtor in a bankruptcy case from "writing down" real estate mortgages held by the State. See *Oklahoma v. Crook*, 966 F.2d 539 (10th Cir.), *cert. denied*, 506 U.S. 985, 113 S.Ct. 491, 121 L.Ed.2d [430] (1992). Has this legal history been rewritten, sub silencio, by *Seminole Tribe?*

In *Seminole Tribe*, the majority did not raise the question whether the Eleventh Amendment barred the assertion of a bankruptcy claim against a State in a bankruptcy court. That issue was first raised by Justice Stevens's dissent. Justice Stevens brought up the issue by characterizing the majority opinion as suggesting that "persons harmed by state violations of federal copyright, bankruptcy and anti-trust laws have no remedy." *Seminole Tribe*, 517 U.S. at 77 n. 1, [116 S.Ct. 1114] (Stevens, J., dissenting) (emphasis added). The majority responded by Justice Stevens's concern about the lack of any remedy to enforce the federal bankruptcy laws against States was "exaggerated both in its substance and in its significance." *Id.* at 73 n. 16, [116 S.Ct. 1114].[27]

For all the reasons discussed above, and especially relying upon the *strong* presumption of constitutionality existing here, the court finds and concludes in this action that section 106(a) of the Code, as it specifically relates to section 523(a)(8), permissibly, validly, and constitutionally abrogates TSAC's sovereign immunity under the 11th Amendment, notwithstanding TSAC's arguments or the *Seminole Tribe* (and related) dicta previously mentioned.[28] TSAC has not demonstrated or established that the Congress acted in an arbitrary and irrational way when it passed sections 106(a) and 523(a)(8) of the Code.[29] Thus, the requirements have been met in this action to abrogate TSAC's sovereign immunity under the 11th Amendment. The Congress

**27.** Richard Liem Kronish, 1998 No. 8 NORTON BANKR.L. ADVISER 1, 10 (August 1998).

**28.** As noted earlier, mere uncertainty as to the constitutionality of a statute does not rebut the presumption existing in favor of the constitutionality of an act of the Congress.

**29.** TSAC bears the burden of showing that it is entitled to sovereign immunity under the 11th Amendment. *Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963); *Williamson v. Lee Optical Inc.*, 348 U.S. 483, 487–488, 75 S.Ct. 461, 99 L.Ed. 563 (1955); see also *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976).

has not exceeded its authority under these facts and applicable law.

Accordingly, the debtor's complaint previously filed under section 523(a)(8) of the Code against TSAC should be allowed to proceed to a full trial on the merits in the bankruptcy court to ultimately determine whether the student loan debts in question actually are subject to a bankruptcy discharge. TSAC's pretrial motion seeking to dismiss the debtor's dischargeability complaint under section 523(a)(8) of the Code for lack of jurisdiction is denied. This result, under these circumstances and applicable law, does not undermine the 11th Amendment immunity of the States. Instead, it, inter alia, fosters uniformity and, as a practical matter, simply means that this dischargeability action under section 523(a)(8) in this case will be heard and decided by the bankruptcy court, rather than the state court, in accordance with the concurrent and bifurcated jurisdictional scheme established under 28 U.S.C. §§ 1334(a)–(b), 157(a)–(d), and 151.